RUTH B. PARKS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23041-87, 13496-88.     Filed April 24, 1990.

*Michael J. Stengel,* for the petitioner in docket No. 23041-87.

Ruth B. Parks, pro se in docket No. 13496-88.

*Paul M. Kohlhoff,* for the respondent.

WHITAKER, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows:

| Year | Deficiency | Additions to tax | | |
| | | *Sec. 6653(b)(1)* [1] | *Sec. 6653(b)(2)* | *Sec. 6661* |
|---|---|---|---|---|
| 1983 | $16,310 | $8,155.00 | 50% of the interest on $16,101[2] | $4,078 |
| 1984 | 4,147 | 2,073.50 | 50% of the interest on $4,147 | - - - |

Petitioner is represented by counsel in docket No. 23041-87 and is pro se in docket No. 13496-88. The two docket numbers were consolidated because the issues are substantially identical, differing primarily in that docket No. 23041-87 pertains to taxable year 1983 and docket No. 13496-88 pertains to taxable year 1984. Respondent concedes that petitioner substantiated itemized deductions in the amount of $3,150 for the year 1983.

The issues remaining for decision are: (1) Whether cash deposits and expenditures made by petitioner during 1983 and 1984 constituted unreported income from an unidentified source; (2) whether petitioner is liable for the additions to tax for fraud for the years 1983 and 1984; and (3) whether petitioner is liable for a section 6661 addition to tax for a substantial understatement of income tax for the taxable year 1984.

## FINDINGS OF FACT

Some of the facts in this case are stipulated and are so found. The stipulations of fact and accompanying exhibits are incorporated by this reference. Petitioner resided in Memphis, Tennessee, at the time of filing her petitions in this case.

During 1983 and 1984, petitioner was employed by the Internal Revenue Service at the Memphis Service Center.

[1] Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Also on the notice of deficiency, respondent determined entitlement to an excess Medicare tax credit of $225, and stated that petitioner therefore had a "net tax deficiency" in the amount of $16,085. There is no explanation for why respondent's determination of the sec. 6653(b)(2) addition for 1983 was based upon a figure of $16,101.

All of petitioner's wages were paid to her in the form of checks. Those checks were deposited to petitioner's bank accounts and reported as income on her Federal income tax returns for the years in issue. Petitioner's monthly take-home pay amounted to approximately $800. Petitioner reported no other source of wage or salary income, other than minimal interest income, in 1983 and 1984.

During the years in issue, petitioner was divorced from James W. Parks. Petitioner and Mr. Parks had one daughter. During their marriage Mr. Parks beat petitioner several times, threatened to kill both petitioner and their child, and shot at petitioner. In 1975, petitioner fired shots at Mr. Parks during a domestic dispute, for which petitioner was arrested. A divorce was granted to petitioner in 1975 on the grounds that Mr. Parks' cruel and inhumane conduct made cohabitation unsafe. Pursuant to the divorce decree, Mr. Parks was required to pay $10 per week in child support to the Clerk of the Circuit Court of Shelby County, Tennessee. Mr. Parks was delinquent in his child support payments, forcing petitioner to petition the Shelby County Circuit Court for an order garnishing Mr. Parks' wages early in 1976. Pursuant to the garnishment order, Mr. Parks paid $290 in child support through the Clerk's office during the remaining portion of 1976. In all subsequent years, including the years in issue, Mr. Parks made no further child support payments through the Clerk's office. The parties stipulate that no checks from Mr. Parks were deposited in any of petitioner's bank accounts during 1983 and 1984. There is no evidence that Mr. Parks ever made cash child support payments.

In his determination of deficiency, respondent used the bank deposits and cash expenditures method of reconstructing income. During 1983, petitioner wrote no checks to cash. However, in addition to her wages from the Internal Revenue Service petitioner made cash deposits in 1983 in the amount of $11,635 to four bank accounts. In transactions unrelated to the cash deposits to her bank accounts, on October 4, 1983, and October 5, 1983, petitioner purchased six separate cashier's checks made payable to Bud Davis Cadillac. Each cashier's check was issued by a different branch of one of two banks. The total amount of

the six cashier's checks was $12,575. By so purchasing cashier's checks in small amounts at several different bank branches, petitioner avoided the filing of a Currency Transaction Report. Currency Transaction Reports are prepared when customers conduct single cash transactions with banking institutions in amounts of $10,000 or greater.

Petitioner used the cashier's checks to make a $12,575 down payment on a 1984 Cadillac Fleetwood Brougham. Petitioner financed the balance of the purchase price of the Cadillac through General Motors Acceptance Corporation (GMAC). Petitioner's monthly payments to GMAC were $418.69, an amount more than half of petitioner's monthly take-home pay.

In transactions again unrelated to any deposits of cash to her bank accounts, on December 9, 1983, petitioner purchased additional cashier's checks in the amount of $12,000. Petitioner used those cashier's checks and cash withdrawn from a revocable trust account established for the benefit of her daughter to pay off the balance she owed GMAC on the Cadillac. Neither the cash deposits nor the cash with which petitioner purchased cashier's checks were reported as income on petitioner's Federal income tax return for 1983.

During 1984, petitioner made cash deposits to two bank accounts in the amount of $8,585, purchased one cashier's check in the amount of $571, and paid doctors' bills totaling $1,925 in cash. However, petitioner wrote no checks to cash from her checking account and withdrew no cash from savings accounts under her control during 1984. Neither the cash deposits, the cash used to purchase the cashier's check, nor the cash used to pay doctors' bills were reported as income on petitioner's 1984 Federal income tax return. During the initial audit of her tax returns, petitioner stated that she received no child support in 1983 and 1984.[3] Petitioner's tax returns for 1983 and 1984 were subsequently audited by the Criminal Investigation Division (CID) of the Internal Revenue Service. After referral of her case

---

[3]Petitioner first claimed in her petition that the unreported cash in issue came from periodic cash child support payments, including a lump sum cash support payment of $40,000 which Mr. Parks allegedly made in 1980. However, in addition to stating to the revenue agent that she received no child support payments in 1983 or 1984, petitioner did not mention receipt of cash child support payments in previous years with which she made expenditures in 1983 and 1984.

to CID, petitioner invoked the Fifth Amendment and refused to answer questions or cooperate in any other way with respondent's examiners or with CID agents. CID terminated its investigation in December 1987, without recommendation. Respondent has not identified a likely source of the cash in issue.

## OPINION

Respondent argues that petitioner had unreported cash income from an unidentifiable source for the years before the Court. Petitioner is, contends respondent, liable for the tax on such income. We agree. Respondent determined unreported income through the use of the bank deposits and cash expenditures method of reconstructing income. It is well established that when a taxpayer's method of accounting does not clearly reflect income, respondent may recompute such income. Sec. 446(b); *Holland v. United States,* 348 U.S. 121, 130-132 (1954). We approve of respondent's use of the bank deposits and cash-expenditures method of recomputing income. *Nicholas v. Commissioner,* 70 T.C. 1057, 1065 (1978); *Estate of Mason v. Commissioner,* 64 T.C. 651, 653 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Indeed, bank deposits are prima facie evidence of the receipt of income. *Tokarski v. Commissioner,* 87 T.C. 74, 77 (1986).

Petitioner argues that respondent has the burden of proving a deficiency by showing that her cash deposits and expenditures represented unreported income and of proving the source of such income. Petitioner further suggests that respondent must prove that the deposits and expenditures were neither gifts, inheritance, nor other nontaxable receipts. Respondent must also, according to petitioner, identify the taxable source of the unreported receipts.

Contrary to petitioner's belief, the burden is upon petitioner to prove that respondent's determination of unreported income, computed using the cash deposits and expenditures method of reconstructing income, is incorrect. *Nicholas v. Commissioner, supra* at 1064; *Zarnow v. Commissioner,* 48 T.C. 213, 216 (1967); *Reaves v. Commissioner,* 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961). Respondent's determination of deficiency absent such proof

is presumed correct. *Welch v. Helvering,* 290 U.S. 111 (1933).

Petitioner admits she received cash with which she made the cash deposits and the cash expenditures in issue, but would have us find that those cash deposits and expenditures did not constitute unreported income from an unidentified source. Petitioner asserts that all of the cash in issue came from cash child support payments. According to petitioner, her ex-husband was a gambler with a sporadic flow of income. Allegedly, when Mr. Parks was successful in his gambling pursuits, he came to petitioner's home and presented her with cash to use for the support of their daughter. Such cash child support payments, maintains petitioner, included a lump sum of $40,000 given to petitioner by Mr. Parks in 1980.

We find that petitioner has not satisfied her burden of proving respondent's determination of unreported income in 1983 and 1984 incorrect. We find incredible petitioner's testimony that she kept a hoard of $40,000 in cash child support payments in a metal box inside a heating vent for 3 years, until deciding to buy a Cadillac for her daughter. Mr. Parks did not testify at trial. We accord little probative weight to, and view with suspicion, the testimony of Ms. Mormon, petitioner's close friend and only corroborating witness. Ms. Mormon testified that petitioner showed her a metal box containing a large amount of cash sometime in 1980. Petitioner testified that she hid the cash hoard in the metal box in the heating vent in the floor of her bedroom. Ms. Mormon, however, testified that petitioner took a metal box filled with cash out from behind a board in a wall. We are not required to accept the testimony of petitioner. *Fleischer v. Commissioner,* 403 F.2d 403, 406 (2d Cir. 1968), affg. a Memorandum Opinion of this Court; *Tokarski v. Commissioner, supra* at 77.

Moreover, even had we determined Ms. Mormon's testimony was credible, that testimony would not support petitioner's position. The witness could not verify that such cash came from child support payments, but merely that she had seen such a box containing a large amount of cash hidden in petitioner's house.

Furthermore, with respect to the deficiency determination, petitioner's argument that respondent failed to disprove any other nontaxable source for the cash in issue is fruitless. Where a taxpayer provides respondent with no leads as to source, respondent is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the taxpayer. *Holland v. United States, supra* at 138; *Petzholdt v. Commissioner,* 92 T.C. 661, 695-696 (1989). Moreover, where a taxpayer admits receipt of cash, respondent need not prove a likely source of resulting cash deposits or expenditures. Cf. *Tokarski v. Commissioner, supra* at 76-77.

Petitioner provided respondent with no books, papers, check stubs, or other leads to pursue in order to determine if the cash might have some nontaxable source other than child support. Indeed, petitioner refused entirely to cooperate with respondent's agents and the CID investigation. Therefore, for all the reasons stated above, we find that petitioner had unreported income of $36,210 in 1983 and $11,081 in 1984. Under the circumstances of this case, the fact that respondent could not identify a specific taxable source does not immunize petitioner from liability for the tax on such unreported income.

Respondent determined that petitioner was liable for the fraud additions to tax pursuant to section 6653(b)(1) and (2). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Gajewski v. Commissioner,* 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); *Estate of Pittard v. Commissioner,* 69 T.C. 391 (1977). Fraud is not to be imputed or presumed. *Beaver v. Commissioner,* 55 T.C. 85, 92 (1970); *Otsuki v. Commissioner,* 53 T.C. 96 (1969). Respondent has the burden of proving that some portion of an underpayment is due to fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

To satisfy his burden of proof, respondent must show two things. First, respondent must prove that an underpayment exists. Where, as here, respondent has prevailed on the issue of the existence of a deficiency by virtue of a taxpayer's failure to carry his burden of proof, respondent cannot rely on that failure to sustain his burden of proving

fraud. *Petzholdt v. Commissioner, supra* at 700; *Estate of Beck v. Commissioner,* 56 T.C. 297, 363 (1971). We must be careful in such cases not to bootstrap a finding of fraud upon a taxpayer's failure to prove respondent's deficiency determination erroneous. *Drieborg v. Commissioner,* 225 F.2d 216, 218 (6th Cir. 1955), affg. in part a Memorandum Opinion of this Court. Second, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. *Stoltzfus v. United States,* 398 F.2d 1002, 1004 (3d Cir. 1968); *Rowlee v. Commissioner,* 80 T.C. 1111 (1983).

Respondent can satisfy his burden of proving the first prong of the fraud test, i.e., an underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income in one of two ways. Respondent may prove an underpayment by proving a likely source of the unreported income. *Holland v. United States,* 348 U.S. 121 (1954); *Nicholas v. Commissioner,* 70 T.C. 1057 (1978). Alternatively, where the taxpayer alleges a nontaxable source, respondent may satisfy his burden by disproving the nontaxable source so alleged. *United States v. Massei,* 355 U.S. 595 (1958); *Kramer v. Commissioner,* 389 F.2d 236, 239 (7th Cir. 1968), affg. a Memorandum Opinion of this Court.

Respondent did not prove a likely source of petitioner's unreported income. Thus, in order to satisfy his burden of proving an underpayment respondent must disprove petitioner's allegation of a cash hoard comprised of accumulated or lump-sum cash child support payments. Respondent may disprove that alleged specific nontaxable source of income through showing that his reconstruction of income is accurate combined with a showing that petitioner's allegation of a cash hoard is inconsistent, implausible, and not supported by objective evidence in the record. See *Boggs v. Commissioner,* T.C. Memo. 1985-429, 54 P-H Memo T.C. par. 85,429 at 1939, 50 T.C.M. 797, 830; *Phillips v. Commissioner,* T.C. Memo. 1984-133, 53 P-H Memo T.C. par. 84,133 at 472-474, 47 T.C.M. 1289, 1304-1305.

Petitioner maintains that respondent has merely shown suspicious circumstances which are insufficient to support a

finding of fraud. Petitioner argues, in effect, that respondent cannot satisfy his burden of disproving a cash hoard allegedly composed of child support payments without producing Mr. Parks to testify at trial in refutation of petitioner's allegation. However, petitioner's allegation of a cash hoard is sufficiently implausible and incredible, and respondent's reconstruction of income sufficiently accurate, that the testimony of Mr. Parks is unnecessary. Under circumstances such as we find in this case, respondent need not satisfy his burden through direct testimony by an alleged transferor refuting that he or she was the nontaxable source of unreported income.

Respondent's reconstruction of petitioner's income using the cash expenditures and deposits method was accurate and reliable. Petitioner admitted making those cash deposits and expenditures. Petitioner further admitted that she did not report income represented by those cash deposits and expenditures on her returns for 1983 and 1984.

However, petitioner's allegation of a nontaxable cash hoard which came from cash child support payments made by Mr. Parks is inconsistent and implausible. Similar to the taxpayer in *Phillips v. Commissioner, supra,* petitioner did not allege such a nontaxable source of the unreported income until filing her petition. Petitioner originally told the revenue agent investigating her 1983 and 1984 returns that she received no child support. Petitioner failed to mention to the revenue agent the existence of a cash hoard comprised of a $40,000 lump-sum child support payment claimed to have been made in 1980. Other than petitioner's testimony, the record reveals no evidence that Mr. Parks ever voluntarily paid child support. Within a year of her divorce, petitioner was forced to seek a court order garnishing Mr. Parks' wages in order to receive unpaid support payments of $10 per week. The only documentary evidence that Mr. Parks at any time made child support payments is the parties' stipulation that Mr. Parks paid $290 in 1976 pursuant to that garnishment order.

The violent relationship between petitioner and Mr. Parks is further indication of the implausible and incredible nature of petitioner's allegation. Petitioner testified that her ex-husband was cruel, abusive, and a habitual gambler. In her

petition for dissolution of marriage, petitioner stated that she was "mortally afraid" of Mr. Parks and charged that Mr. Parks was guilty of abandoning and refusing to provide for her. During their marriage Mr. Parks beat petitioner several times, threatened to kill both petitioner and their child, and shot at petitioner. Petitioner was arrested in 1975, just prior to her divorce, for shooting at Mr. Parks. Nothing in the record convinces us that Mr. Parks rehabilitated his violent nature to the extent that he began appearing peacefully at petitioner's doorstep with large sums of cash to support the child he had earlier threatened to kill, or that petitioner's fear of Mr. Parks abated to the point of receiving him in her home.

Petitioner testified that she kept a cash hoard hidden in her home. However, petitioner's statement that she hoarded that cash rather than deposit it in a bank for "safety" reasons is incredible in light of the fact that petitioner concurrently kept four other bank accounts, in which she deposited all of her documented income. This conclusion is supported by the fact that petitioner's home was burglarized during the period in which the alleged cash hoard was secreted in her home. Finally, the testimony of Ms. Mormon, petitioner's corroborating witness, did not support petitioner's description of the location of the alleged cash hoard.

We conclude that petitioner's claim of a cash hoard in this case is not only inconsistent with some of her statements to the auditing agent, but is patently incredible as well. Furthermore, petitioner, who as the mother of Mr. Parks' child had an interest in keeping track of Mr. Parks, did not know where Mr. Parks might be found. Thus, knowledge of the source of petitioner's cash income rested peculiarly with petitioner. The necessity of using great care to avoid bootstrapping fraud additions upon a taxpayer's failure to prove respondent's determinations erroneous does not impose upon respondent the burden of producing Mr. Parks to testify in order to disprove the alleged specific nontaxable source of income.

We follow our reasoning in *Boggs* and *Phillips,* in holding that respondent has met his burden of proving an underpayment by clear and convincing evidence. In both cases, as

here, a taxpayer's allegation of a specific nontaxable source of unreported income was incredible, implausible, and contrary to the objective evidence. In addition, respondent's reconstruction of unreported income was accurate in all three cases. *Boggs* and *Phillips* differ from the present case primarily in that in those cases respondent both disproved an alleged nontaxable source of unreported income in the manner used here and also proved a likely source of income. However, respondent need prove the underpayment prong of the fraud test by only one of the alternate methods. *United States v. Massei,* 355 U.S. 595 (1958).

Respondent must also prove by clear and convincing evidence that petitioner had the requisite fraudulent intent. Fraudulent intent may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. *Rowlee v. Commissioner,* 80 T.C. 1111 (1983). The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. *Stone v. Commissioner,* 56 T.C. 213, 223-224 (1971); *Otsuki v. Commissioner, supra* at 105-106.

The intent to conceal or mislead may be inferred from a pattern of conduct. See *Spies v. United States,* 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See *Holland v. United States,* 348 U.S. 121, 137 (1954); *Otsuki v. Commissioner, supra.* However, the mere failure to report income is not sufficient to establish fraud. *Merritt v. Commissioner,* 301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at most create only suspicion." *Davis v. Commissioner,* 184 F.2d 86, 87 (10th Cir. 1950); *Katz v. Commissioner,* 90 T.C. 1130, 1144 (1988).

Other badges of fraud which may be taken into account include: the making of false and inconsistent statements to revenue agents, *Grosshandler v. Commissioner,* 75 T.C. 1, 20 (1980); the filing of false documents, *Stephenson v. Commissioner,* 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, and

failure to cooperate with tax authorities. *Bradford v. Commissioner,* 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court.

We rejected petitioner's argument that her cash income was in reality child support payments. The fact that petitioner structured her purchase of cashier's checks to avoid the filing of Currency Transaction Reports indicates petitioner was trying to conceal her possession of large amounts of cash. Petitioner's statement to respondent's agent that she received no child support payments is inconsistent with her testimony before this Court. Petitioner failed to cooperate with the CID investigation of her tax returns for the years in issue. In addition, the record contains no documentary or other credible evidence supporting petitioner's claim that the unreported income was in reality child support. All the facts and circumstances of this case lead us to conclude that petitioner intentionally failed to report cash income in 1983 and 1984 in an effort to conceal that income. Thus, respondent has satisfied his burden of proving both prongs of the fraud test by clear and convincing evidence and petitioner is liable for the fraud additions to tax.

The last issue we must decide is whether petitioner is liable for the addition to tax set forth in section 6661 for 1983. Section 6661 imposes an addition to tax if there is a substantial understatement of income tax for a taxable year. The amount of such additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a); *Pallottini v. Commissioner,* 90 T.C. 498 (1988). A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b). If petitioner's understatement of income is substantial within the meaning of section 6661(b), she is liable for the section 6661 addition unless such understatement can be reduced by section 6661(b)(2)(B).

By either test of section 6661(b), petitioner's underpayment is a substantial underpayment. Petitioner had no authority for her failure to report her cash income in 1983, nor did she disclose any facts pertaining to such income on her 1983 return or in a statement attached to her return for

.that year. Therefore, the addition cannot be reduced through application of the provisions of section 6661(b)(2)(B). Petitioner is liable for the section 6661 addition to tax. For the foregoing reasons,

*Decisions will be entered under Rule 155.*