J. THOMAS JUMPER AND LINDA J. JUMPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jumper v. Commissioner
Docket Nos. 16999-88, 28682-88
United States Tax Court
T.C. Memo 1991-86; 1991 Tax Ct. Memo LEXIS 94; 61 T.C.M. (CCH) 2026; T.C.M. (RIA) 91086; February 28, 1991, Filed *94 Decisions will be entered under Rule 155. Ronald J. Bruno, for the petitioners. John R. Keenan, for the respondent. PARR, Judge. PARR
MEMORANDUM OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
§ 6653(a)(1) [1]
§ 6653(a)(2)
§ 6661
1983
$ 17,979.00
$ 898.95
*
$ 4,494.74
1984
21,219.00
1,060.95
*
5,288.00
After concessions the issues remaining for decision are: (1) Whether petitioners underreported their income in the amounts of $ 48,394 and $ 21,671 for tax years 1983 and 1984, respectively. (2) Whether petitioners are entitled to deduct depreciation *95 and other expenses attributable to the portion of their home used in connection with their Amway activity for tax years 1983 and 1984. (3) Whether petitioners are entitled to automobile expenses incurred in connection with their Amway activity for tax years 1983 and 1984. (4) Whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) for tax years 1983 and 1984. (5) Whether petitioners are liable for additions to tax for substantial understatement of income tax under section 6661 for tax years 1983 and 1984. Petitioners resided in Benton, Arkansas, at the time they filed their petition. For convenience we have combined our findings of fact and opinion. I. CASH HOARDS Petitioners were married in October 1982. In November 1982 petitioners began investing in rental properties. In March 1983 petitioners began operating an Amway activity under the name, J & J Marketing. Petitioners opened bank accounts for their Amway activity and their rental activity during March 1983. During the years in issue petitioner husband practiced dentistry. Judy Stanley (Ms. Stanley) manages the finances in petitioner husband's dental practice. Ms. Stanley *96 previously worked at the Union Bank of Benton. Petitioners profess they hoarded previously taxed cash for many years and continue to do so. However, they failed to keep records of their cash hoards during the years at issue. Petitioner husband claims he began keeping cash around 1973 or 1974 at his mother's house during his previous marriage to an alcoholic wife. Petitioner wife testified she hid various amounts of money all over her house during her previous marriage to an alcoholic husband. At the time of trial petitioners claimed to possess two cash savings, one at the home of petitioner husband's mother and one at petitioners' house. Respondent determined $ 48,394 and $ 25,741 worth of bank deposits were not accounted for on petitioners' 1983 and 1984 tax returns, respectively. Petitioners conceded $ 4,070 should have been included in the 1984 Schedule C gross receipts. Petitioners contend the source of the unaccounted bank deposits is from previously taxed personal cash savings primarily composed of shareholder loans to petitioner husband from his dental corporation. Respondent maintains petitioners' explanation as to the source of the funds at issue is not credible. *97 Additionally, respondent maintains petitioners failed to carry their burden of proof. Petitioners bear the burden of proving respondent's determination is incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioners contend they kept hidden cash because they distrusted banks, yet throughout the years in issue petitioners maintained bank accounts for their activities. Petitioner husband hired Ms. Stanley, a former bank teller, to handle the money in his dental office. This is not the type of behavior exhibited by people whose distrust of banks runs so deep that they hoard cash. Petitioners have produced no records of their cash hoards, and have provided the Court with little solid testimony upon which to find the existence of their cash hoards. Petitioner husband testified he kept his cash at his mother's house. Petitioner husband also testified he recorded a cash count from time to time on an envelope in his cash box. At the time of trial, petitioner husband had no idea where the envelope was. Petitioners supplied respondent with sworn affidavits indicating petitioner husband's cash hoard equalled $ 46,000, and petitioner wife's cash *98 hoard equalled $ 23,000, but petitioner husband later admitted on cross examination the amounts were just "guesstimates". Petitioner wife testified that during her previous marriage she kept her cash hidden piecemeal in various places around the house, because she was afraid her alcoholic husband would find the money. Given those circumstances, a bank would seem a much safer place for her money than various hiding places in the same house where her husband lived. Petitioner wife testified her cash hoard was approximately $ 23,000 at the beginning of 1983. Petitioner wife's story has no independent corroboration. She testified concerning teaching retirement benefits and two divorce settlements, but produced no documentary evidence at trial to support these sources of funds, nor even to support income levels in prior years sufficient to have accumulated her purported cash hoard. Likewise, petitioner husband's corroboration was, at best, weak. His mother testified she knew of the cash hoard because her son told her about it, and that he brought out his cash box and showed her the cash a few times. Her description of the box is close to her son's description but not exact, particularly *99 in that she testified the box was tan and petitioner husband testified the box was gray. Petitioners argue loans to petitioner husband from his dental practice constitute a large source of the cash hoards. However, petitioners did not mention any loans in their petition or pretrial memorandum. Petitioner husband testified on direct examination: Q. You told the Court that you put your tax refunds, bonuses from your business. Were there any loans from your PA that were put into this rainy day money? A. I don't think there were any loans. All the money out of my dental practice was bonused out salaried money that was taken up as salary. Later during the trial petitioner husband's accountant testified cash loans from the dental corporation to petitioner husband amounted to $ 28,327.88. Petitioner husband's accountant possessed no knowledge of how petitioner husband used the borrowed money. On further redirect examination petitioner husband testified: Q. Dr. Jumper, you have heard Scott Lovell's testimony about the loans from your PA? A. Yes. Q. Did you get loans from your PA? A. Yes, I did. Q. In the form of cash? A. Yes, I did. Q. What did you do with the money?
*100 A. I put the money back in my cash box. Q. Which one? In '83 and '84? A. In '83 and '84? I put it in the one at home. Q. Your home? A. Yes. Q. Before that, '82? A. '82 -- prior to that, the only one I had was at my mom's. Petitioner husband produced no records substantiating his prior levels of income capable of creating such a cash hoard. Petitioners did not receive any inheritances during the years at issue. We are not required to accept the testimony of petitioners. Parks v. Commissioner, 94 T.C. 654, 659 (1990). Based on the entire record, we conclude that petitioners' explanation of their cash hoard is not sufficient to sustain their burden of proof. II. AMWAY ACTIVITY In 1983 petitioners reported on Schedule C gross income from an Amway activity in the amount of $ 1,948 and deductions of $ 22,645, for a net loss of $ 20,697. In 1984 they reported gross income of $ 7,678 and deductions of $ 38,158, for a net loss of $ 30,480. Respondent does not argue that petitioners were not engaged in a trade or business. Home Office Deductions
Petitioner husband purchased a 3,200 square foot home in 1974 and used it solely for personal *101 purposes. During tax years 1983 and 1984 petitioners used a storage room (252 square feet), den (250 square feet), and living room (450 square feet) to conduct their Amway activity. Save for a lone easel standing in the corner, the living room contains no indicia of business usage. Section 280A(c)(1)(B) allows a deduction for a portion of a dwelling unit exclusively used on a regular basis as a place of business which is used by clients or customers in meeting or dealing with a taxpayer in the normal course of his trade or business. Petitioners bear the burden of proving the exclusive and regular use of the living room for their Amway activity. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioners offered only their own uncorroborated testimony in support of the exclusive and regular business use of the living room. Petitioners testified the living room was purposely decorated as a living room so as not to discourage potential clients. We are not persuaded. Petitioners have not carried their burden of proof on this issue, with regard to the living room. Petitioner husband purchased his personal residence in 1974. Petitioner husband used *102 the property solely as a personal residence until 1983, when petitioners began their Amway activity. Petitioners claimed a deduction for depreciation of the portion of their home used in the Amway activity during tax years 1983 and 1984. Petitioners claimed they placed the garage, den, and living room in service during 1983, and calculated their depreciation deduction using the Accelerated Cost Recovery System (ACRS) as provided by section 168. Respondent argues petitioners do not qualify for deductions under section 168. We agree. Section 168 ACRS deductions are not available for property placed in service prior to January 1, 1981. Property is placed in service when it is "first placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax exempt activity, or in a personal activity." Sec. 1.167(a)-11(e)(1), Income Tax Regs.
Petitioners' house was first placed in a condition or state of readiness for use in a personal activity during 1974, when petitioner husband purchased the house and began using it as a personal residence. Petitioners were not entitled to a deduction *103 for depreciation until 1983 when they began their Amway activity. Therefore, the house was first placed in service during 1974, and petitioners may not use ACRS for calculating their depreciation deduction on the house. Hood v. Commissioner, T.C. Memo 1988-205; Foster v. Commissioner, T.C. Memo 1990-427. Because petitioner's home was placed in service before 1981, section 167 governs petitioners' depreciation deductions. We find that petitioners used the storage room and den exclusively for their Amway activity. Petitioners are therefore allowed depreciation and other home office deductions attributable to the den and storage room. Automobile Expenses
Petitioner husband maintained daily calendars from March 1983 through 1984. The calendars solely contained names written in on particular dates. Petitioner husband used these calendars to reconstruct mileage summaries approximately one week before the trial. Petitioner husband reconstructed the mileage summaries by associating a place with the name on a particular date, and approximating the mileage for that place on that date. He testified at length as to the mileage amounts and *104 business purpose of almost all the calendar entries. He also testified to the existence of mileage summaries utilized in preparing petitioner's 1983 and 1984 tax returns, but never introduced them at trial. Petitioners did not keep a record of the particular car driven, or the odometer mileage after each trip during tax years 1983 or 1984. Petitioners used the standard mileage rate to calculate their automobile expenses for tax years 1983 and 1984. While the standard mileage rate relieves petitioners from proving the exact amount of their business automobile expenditures, they still must prove the actual amount of business miles driven during 1983 and 1984. Section 274(d) allows no deduction under section 162 for any travel expense incurred away from home, unless a taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement, the amount, time, place, and business purpose of each expense item. Sec. 1.274-5(c)(1), Income Tax Regs.
Petitioners must comply with the strict requirements of section 274(d) in order to deduct their automobile expenses incurred while travelling away from home. Petitioners' calendars and summaries for 1983 and *105 1984 do not satisfy the adequate records requirement. Sec. 1.274-5(c)(2), Income Tax Regs.Section 1.274-5(c)(3), Income Tax Regs., permits a taxpayer who fails to provide adequate records to establish an element by his own statements containing specific information in detail and by other corroborative evidence sufficient to establish the element. The corroborative evidence must "establish each statutory element - amount, time, place, and purpose - of the expenditure with precision and particularity." Dowell v. United States, 522 F.2d 708, 714-715, n.10 (5th Cir. 1975), quoting Hughes v. Commissioner, 451 F.2d 975, 979 (2d Cir. 1971). Petitioners have not produced sufficient corroborative evidence to comply with section 1.274-5(c)(3), Income Tax Regs. Accordingly, petitioners have failed to comply with the section 274(d) substantiation requirements with respect to their away from home automobile expenses in tax years 1983 and 1984, and the expenses must be denied. Local transportation as to the years in suit, on the other hand, falls under the general business substantiation requirements of section 162. Section 1.162-17(d), Income Tax *106 Regs., requires taxpayers to maintain adequate records to substantiate transportation and other expenses incurred in carrying on a trade or business. Where records of the expenses are incomplete or documentary proof is unavailable, it may be possible to establish the amount of the expenditures by approximations based on reliable secondary sources of information and collateral evidence. Sec. 1.162-17(d)(3), Income Tax Regs.; Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Based on the record before us we find petitioners drove 7,000 local business miles in 1983 and 10,000 in 1984. III. ADDITIONS TO TAX Section 6653(a) - Negligence
Section 6653(a) (1) imposes an addition to tax if anypart of an underpayment is due to negligence or disregard of rules and regulations. Section 6653(a)(2) imposes an additional amount equal to 50% of the interest payable with respect to the portion of the underpayment which is attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *107 Petitioners bear the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners failed to maintain adequate books and records necessary to support their assertion of a cash hoard consisting of previously taxed cash savings. We find petitioners negligent with respect to the unreported income in tax years 1983 and 1984. For purposes of section 6653(a)(2), we find petitioners are not liable for that portion of the negligence addition to tax attributable to away from home travel, local transportation, and the home office deductions. Section 6661 - Substantial Understatement of Tax
Section 6661(a) imposes an addition to tax on any underpayment attributable to a substantial understatement of income tax. Section 6661(b)(1) defines a substantial understatement as an understatement exceeding the greater of 10 percent of the tax required to be shown on the return for the tax year, or $ 5,000. Section 6661(b)(2)(B) decreases the amount of an understatement for section 6661(a) purposes if there is substantial authority for the taxpayer's treatment of an item, or if the taxpayer adequately discloses relevant facts affecting an item's tax *108 treatment in the tax return or in a statement attached to the tax return. Petitioners failed to comply with the adequate disclosure requirement of section 6661(b)(2)(B)(ii). Additionally, petitioners failed to persuade the Court that "substantial authority" within the meaning of section 1.6661-3, Income Tax Regs., existed for any of the items on the 1983 or 1984 tax returns. Accordingly, the section 6661 additions to tax apply to the extent the Rule 155 computations indicate a section 6661(b)(1)(A) substantial understatement exists. To reflect the foregoing, and concessions made by the parties, Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest payable under sec. 6601 with respect to the portion of the underpayment attributable to negligence.↩