JOE L. WEBSTER AND OPERINE WEBSTER, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webster v. Commissioner
Docket No. 1124-91.
United States Tax Court
T.C. Memo 1992-220; 1992 Tax Ct. Memo LEXIS 237; 63 T.C.M. (CCH) 2757; April 14, 1992, Filed *237 Decision will be entered under Rule 155. Petitioner husband was a "runner" engaged in illegal gambling activities. He did not report his income from such activity. 1. Held: Petitioners have not carried their burden of proof as to deficiencies, and an addition to tax under sec. 6661, I.R.C., determined by respondent. 2. Held, further: respondent has carried her burden of proof as to additions to tax for fraud under sec. 6653(b)(1)(A) and (B), I.R.C., as to petitioner husband but not as to petitioner wife. Fred K. Persons, for petitioners. Patricia Evans, for respondent. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge. In her notice of deficiency, respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(B)
Sec. 6661
1986
$   690
$   517.50
[1]
N/A    1987
8,961
6,720.75
[2]
$ 2,240.25
*238 Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners had unreported income for the years in question from petitioner Joe L. Webster's activities as a numbers runner, (2) whether petitioners are subject to additions to tax for fraud under section 6653(b)(1)(A) and (B), and (3) whether petitioners are subject to an addition to tax under section 6661 for 1987 on account of a substantial understatement of income tax liability. Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners resided in Flint, Michigan, at the time the petition herein was filed. Hereinafter, the term "petitioner" will be used solely to refer to petitioner Joe L. Webster. During the taxable years in question, petitioner was involved in an illegal gambling business with one Mertis Washington (Washington). In 1988, petitioner, along with Washington and several others, was indicted, tried, and *239 convicted of conducting an illegal gambling business from about December 1, 1986, to about October 29, 1987. Petitioner's role in the business was that of a "runner" for Washington. As a runner, petitioner would collect bets and deliver betting slips showing such bets to Washington. Petitioner was identified on the business records of Washington by the code number "518". Petitioner's business arrangement with Washington was that petitioner would remit to Washington 75 percent of all bets collected by him and booked with Washington. Petitioner was entitled to keep 25 percent of such bets. Washington's business records for 1986 and 1987 contain numerous entries of bets booked by petitioner with Washington. From those records, respondent has calculated bets booked by petitioner with Washington of $ 7,032.40 [1] and $ 100,591.61 [2] for 1986 and 1987, respectively. She has also calculated petitioner's 25-percent share of those gross bets for each year as $ 1,758.10 and $ 25,147, respectively. *240 Petitioner kept no records of his business dealings with Washington. Following his conviction for conducting an illegal gambling business, petitioner was sentenced to a prison term of 5-1/2 years. That sentence was imposed after the sentencing judge determined that petitioner had transferred $ 30,000 (the approximate amount of his profits from the illegal gambling business) to his wife (petitioner Operine Webster) and then secured a divorce from her in order to conceal that sum and, thus, avoid any fine that the court might impose. After serving 5-1/2 months, petitioner's sentence was suspended on the condition, among others, that he pay a fine of $ 30,000. That fine was paid by Operine, whom petitioner subsequently remarried. For 1986 and 1987, petitioners filed joint individual income tax returns that show, for 1986, adjusted gross income of $ 37,831 and, for 1987, adjusted gross income of $ 37,398. Neither return shows any income from activities associated with illegal gambling. A trial in this case was held in Detroit, Michigan, on February 27, 1992. Petitioners called no witnesses. Petitioners restricted themselves to cross-examining respondent's witnesses, who testified *241 in support of respondent's fraud additions. In their petition, petitioners assign error to both the deficiencies and additions to tax determined by respondent. Petitioners bear the burden of proof as to the deficiencies and the addition to tax determined under section 6661. Rule 142(a). Petitioners have not carried that burden. There is nothing in the stipulation of facts or in the testimony of respondent's witnesses that makes petitioners' case; petitioners, through their failure to testify on their own behalf, call any other witnesses, or otherwise put into evidence anything in support of their assignments of error, certainly have failed to make their case. Accordingly, we sustain the deficiencies and addition to tax under section 6661. See Rule 149(b); Keehn v. Commissioner, T.C. Memo. 1983-511. With regard to the additions to tax for fraud, respondent bears the burden of proving by clear and convincing evidence that some portion of an underpayment for each year is due to fraud. Sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660 (1990). The fraud contemplated by section 6653(b) is an actual, intentional wrongdoing *242 and the intent required is a specific purpose to evade a tax believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Respondent must show (1) that an underpayment exists, and (2) that each petitioner intended to evade taxes known to be owing, by actions intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, supra at 660-661. The existence of fraud is a question of fact that we must resolve upon considering the entire record. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Fraud never is presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), but may be proved by circumstantial evidence, because direct proof of the taxpayer's intent rarely is available. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). *243 Courts have developed several objective indicators, or "badges", that tend to establish fraud. Recklitis v. Commissioner, supra at 910. For example, indicia of fraud include: (1) Inadequate records, (2) concealment of assets, (3) engaging in illegal activities, and (4) use of aliases. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Lipsitz v. Commissioner, 220 F.2d 871, 875 (4th Cir. 1955), affg. 21 T.C. 917 (1954). While the Commissioner may not rely upon the taxpayer's failure to prove error in respondent's determination as to the underlying deficiencies in tax to satisfy the burden of proving fraud, Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982), on the record presented, we are convinced that all of petitioner's deficiencies for each of the years 1986 and 1987 were due to fraud. Petitioner Joe L. Webster
Petitioner was convicted of conducting an illegal gambling business from about December 1, 1986, to about October 29, 1987. Petitioner's arrangement with Washington, the head of that business, was that *244 petitioner would "run" numbers on a commission basis, keeping 25 percent of bets booked by petitioner with Washington. On cross-examination of respondent's principal witness (Washington's bookkeeper, Paulette Guice), it was established that, on occasion, a betting slip may have been received without an accompanying cash payment, which would lead to the conclusion that no cash was collected out of which the runners' commission could have been retained. It is our impression that such an event, if it ever occurred, was very rare. Indeed, petitioners have not shown that such occurrences (if they occurred) diluted to any significant degree the income that Washington's books indicate petitioner earned from his activities as a runner for Washington. Petitioners' returns for the years in question include no income from petitioner's activities as a runner and, thus, we find that, for each year, an underpayment exists. Moreover, each such underpayment is due to fraud. All of the badges of fraud mentioned above exist in this case to some degree or another. Petitioner reported his income as an auto worker for the years in question, indicating that he knew of his duty to file returns and *245 pay taxes. Petitioner did not testify that he thought the income in question to be nontaxable. From that we draw the conclusion that petitioner knew it to be taxable. He kept no records of his unreported income. The income in question arose from an illegal activity, which we presume petitioner wished to conceal. Petitioner transferred certain assets to his wife immediately before divorcing her in order to conceal them from the judge sentencing him on his criminal conviction. Although petitioner's transfer of assets and divorce may have been undertaken for reasons unrelated to his tax liabilities, we think that such actions are direct evidence of his willingness to commit fraud and are at least indirect evidence of his disposition to commit fraud with intent to evade tax. See McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Finally, it is clear that Washington, in his books, used an alias to refer to petitioner. Whether that was done solely to thwart the tax collector is unclear. We believe, however, that it is some evidence that petitioner wished to conceal his illegal income, no doubt from, among others, *246 the tax collector. We conclude that respondent has clearly and convincingly established from the record as a whole that petitioner intended to evade tax that he knew to be owing, by actions intended to conceal, mislead, or otherwise prevent the collection of taxes. Accordingly, we will sustain respondent's determinations of additions to tax under section 6653(b)(1)(A) and (B) for each of the years in question with regard to petitioner. [3]
Petitioner Operine Webster
Section 6653(b) requires that an addition to tax for fraud must be proven with respect to each spouse separately. Respondent has introduced no evidence directly *247 demonstrating that petitioner Operine Webster acted with fraudulent intent. We will not infer such activity from the evidence presented in support of respondent's case against petitioner. Consequently, we do not sustain any determination of an addition to tax for fraud as against petitioner Operine Webster. To reflect concessions made by respondent, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 690. ↩
2. 50 percent of the interest due on $ 8,961.↩
1. There is some slight difference between this figure and the corresponding figure appearing in respondent's statutory notice of deficiency. That difference, however, does not change the amount of deficiency determined by respondent for 1986. ↩
2. This figure is $ 318.61 less than the corresponding figure set forth in respondent's statutory notice of deficiency. Respondent concedes any deficiency attributable to that difference.↩
3. The only adjustments proposed in the notice of deficiency are the adjustments to petitioner's gross receipts for failure to report the income petitioner received from activities related to illegal gambling. As such, respondent contends that the full amount of the underpayment for each year is due to fraud and is subject to the addition to tax pursuant to sec. 6653(b)(1)(B)↩. We agree.