**In re Arlen G. KELESYAN, Debtor.**

**Bankruptcy No. 91–7294–8P3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 13, 1993.

John E. Kassos, St. Petersburg, FL, for debtor.

## ORDER ON DEBTOR'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 13 case, and the matter under consideration is Arlen G. Keles- yan's (Debtor) Objection to Claim of the United States of America, Internal Revenue Service (IRS). The claim under challenge was filed by the IRS in the amount of $209,514.64 and is comprised of the following items: a $150,486.49 § 507(a)(7) priority claim; and a $59,028.16 general unsecured claim. The claim is based on a deficiency assessment made by the IRS which charged the Debtor with additional taxable income due for the calendar years 1982, 1985, 1986 and 1987. The claim of the IRS, of course, also includes the appropriate interest charged on the amount assessed, together with a penalty of $59,028.16. The claim is the result of an audit of the Debtor's tax returns filed by the Debtor and his spouse. The audit conducted by the IRS determined that the Debtor had unreported income of $40,580.00, improperly claimed certain business expense deductions of $7,830.00, and an investment tax credit of $1,078.00 and $977.00, of which had been carried back by the Debtor to the calendar year of 1982. The 1986 deficiency was based upon unreported income of $160,-048.00, disallowed business expense deductions of $11,227.00, and disallowed personal interest deductions of $3,467.00. Finally, the 1987 deficiency was based upon disallowed business expense deductions of $6,457.00, disallowed personal interest deductions of $54.00, and disallowed rental expense deductions of $4,232.00, none of these determinations by the IRS are conceded by the Debtor who claims that the deficiency assessment by the IRS was improper and not supported by the relevant facts.

It is well settled that an IRS determination of tax deficiency is presumptively correct, and that a taxpayer has the burden of rebutting the presumption. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). The methods by which a taxpayer may rebut the presumption differs between unreported income situations and disallowed deduction situations. When the IRS determines a deficiency based upon unreported income,

the taxpayer may rebut the presumption either by producing evidence that a receipt of funds is not taxable income, or by showing that the income determination of the IRS was derived from unreliable evidence. *Gatlin v. Commissioner*, 754 F.2d 921 (11th Cir.1985). Furthermore, where a taxpayer claims a non-taxable source for funds received, the IRS may reject its claim by showing that the taxpayer's explanation is inconsistent, implausible, and not supported by objective external evidence. *Parks v. Commissioner*, 94 T.C. 654, 1990 WL 48997 (1990). In addition, where the IRS disallowed an expense deduction, the taxpayer must introduce evidence which supports both the taxpayer's entitlement to the deduction and the amount of the deduction in order to rebut the presumption. *Gatlin, supra.* Thus, there are two distinct standards which must be applied in this case in order to determine whether the Debtor has rebutted the presumption that the deficiency, as determined by the IRS, is correct.

### 1985 UNREPORTED INCOME

The IRS determined that the Debtor failed to report taxable income for the tax year of 1985. According to the IRS, this determination was based on the Debtor's failure to satisfactorily explain numerous deposits in his checking account totalling $40,580.00. The Debtor gives the following explanations for these deposits.

■ First, the Debtor claims that seven equal deposits of $4,995.00, which were made at various times during the year, were gifts from his mother residing in Turkey. The Debtor failed to produce any independent external evidence other than his statement that the funds came from his mother.

The IRS points to several inconsistencies in the Debtor's explanation as to the source of these funds. First, although the Debtor testified that the transfers were initiated by his mother from Turkey, he also testified that his mother lived with him in the U.S. for at least 10 months during the calendar year of 1985. Second, the Debtor claimed his mother as a dependent on his 1985 tax return, and stated on the return that her income was under $1,000.00 for that year, and that she had never filed a tax return since arriving in the U.S. in 1978. Finally, the IRS auditor testified that the Debtor had claimed at the audit that the funds had been derived from the sale of property located in Turkey that the Debtor had inherited and sold during the 1960's.

After a careful review of the evidence presented, it is clear that the Debtor's evidence was nothing more than an unsubstantiated, self-serving assertion of a gift. This Court is constrained to reject the Debtor's explanation, which is laden with inconsistencies and, therefore, the $4,995.00 deposits, or the total deposited in the amount of $34,965.00, should be considered taxable income.

■ The Debtor also claims that approximately $4,900.00 in payments from his corporation into his personal checking account represent loan repayments. However, the Debtor did not substantiate the existence of such an obligation beyond an entry (marked "void") in the checking account for a $2,500.00 loan made to the corporation in January, 1985. This lack of substantiation, combined with the repayments totaling almost twice the amount allegedly loaned, clearly leads to the conclusion that the Debtor's explanation is not plausible, and that these deposits also represent unreported taxable income.

The Debtor also challenged the IRS' determination that $8,416.80 deposited in his checking account was in fact proceeds of a loan he obtained from his corporation. While it is true that loan proceeds are not taxable income, it is clear from this record that the IRS neither included these monies in its ultimate determination of the total of unreported income nor included the sum of $32,489.67 deposited in the Debtor's bank account which represented the receipt of a personal injury settlement.

### 1985 DISALLOWED DEDUCTIONS

As noted earlier, the IRS also disallowed $7,830.00 of deductions claimed by the Debtor on his tax returns as appropriate

business expense deductions. On his individual tax return, the Debtor claimed as an appropriate business expense the cost of maintenance, interest payments and depreciation of a 1984 Toyota van and certain specified video equipment, which the Debtor leased to a non-debtor corporation controlled by the Debtor.

The record reveals that the Debtor was in fact the owner of the Toyota van and the video equipment. It appears that there was in fact a written lease concerning these items between the Debtor and the corporation controlled by him. The IRS disallowed these expenses solely on the basis that this lease was not negotiated at arm's length. The fact that the owner of the property had control of both the lessor and the lessee does not by itself taint the transaction or detract from the legitimacy of the transaction. Absent proof that the stipulated rent payments under these leases were excessive and unreasonable, this Court must recognize that these were proper business deductions. Inasmuch as the IRS has not presented evidence to the contrary, this Court is satisfied that the position of the IRS is not well founded and that these were proper deductible business expenses.

This leaves for consideration the extent to which the Debtor substantiated that he in fact incurred these expenses. The Debtor produced neither evidence to substantiate any of the claimed maintenance expenses for the van, nor any proof of the interest expenses he claimed to have incurred in connection with the purchase of the van and the purchase of the video equipment. This being the case, it is clear that the claimed maintenance expense and the deduction for interest cannot be recognized. However, inasmuch as the Debtor did in fact establish the purchase of the van and the equipment, i.e. the ownership in the same, the depreciation deduction in the amount of $3,145.00 and $1,077.00, respectively, must be recognized as legitimate deductions and the position of the IRS concerning these items cannot be sustained.

## 1986 UNREPORTED INCOME

The IRS determined that the Debtor had failed to report certain income for 1986. The unreported income of $160,048.00 claimed as tax deficiencies for 1986 by the IRS, is based on five unexplained deposits into the Debtor's savings account totalling $156,691.00 and several unexplained deposits into the Debtor's checking account totalling $3,357.00.

The Savings account deposits will be considered first. The Debtor contends that the funds were derived from a non-taxable source. As to two deposits totalling $7,791.00, the Debtor failed to furnish any further explanation. Thus, the Objection to the IRS' claim relating to these deposits must be overruled, and the claim is allowed as filed.

One of the most significant deposits in dispute is one in the amount of $125,000.00 which was received by the Debtor via wire transfer from Turkey on July 22, 1986. It is the Debtor's contention that it was again a gift from his generous mother who allegedly obtained these funds from the sale of property owned by her in Turkey. It is without dispute that the Debtor's mother never filed a gift tax return which, under the Internal Revenue Code, is required with gifts of this size, although it is questionable as to whether or not the Debtor's mother, a citizen of Turkey who resided, with some exception, and still resides in Turkey, had a duty to file a gift tax return.

In support of his contention, the Debtor introduced into evidence a letter dated October 15, 1991, written by Naci Guney, Regional Land Registry Director of Kartal to Ensar Ogut (Debtor's Exhibit 19). The letter indicates that the land in question was owned by the Debtor's mother but was sold by the Debtor himself to one Ensar Ogut pursuant to a power of attorney granted to him by his mother for the equivalent of $125,000.00. The Debtor has neither produced any evidence as to the existence of the power of attorney, any closing documents concerning the sale nor any documents which indicate that the funds in

question were in fact the proceeds of the sale of the land in Turkey.

Two additional documents are contained in the record concerning this transaction. The first is a protest letter written on the Debtor's behalf to the IRS in which it is contended that the land was in fact property of the Debtor and it was held only nominally in the mother's name (Plaintiff's Exh. # 1). The Debtor now disputes the accuracy of the statements in the letter, but admitted that he never attempted to correct it. The second is not actually a letter, but is rather a certified affidavit of the Duty Interpreter for the American Consulate in Istanbul in which the affiant stated that the disputed property had been bequested to the Debtor's mother, Ensar Ogut, and a Pozant Kelesyan, and subsequently sold to a partnership for approximately $126,500.00 (Government's Exh. # 7). Of the proceeds, the Debtor's mother and Ogut each received $625.00, and Pozant Kelesyan received $125,000.00. It is fair to conclude and infer from this affidavit that the Debtor's mother never had $125,000.00 available to give to the Debtor. While the Debtor argues that Pozant Kelesyan is his mother, the evidence is to the contrary and there is nothing in this record to show that she has ever been known by this name or that any discrepancies in the facts relating to this sale was the result of an error made by the land recording office in Turkey. Based on the foregoing, this Court is satisfied that the Debtor failed to overcome the presumption of the validity of the determination by the IRS that the sum of $125,000.00, deposited in the Debtor's savings account, was in fact unreported income.

The record reveals two additional wire transfers which were deposited into the Debtor's savings account. The deposits were made on August 6, 1986 in the total amount of $22,600.00. In support of the proposition that these funds were derived from a non-taxable source, the Debtor contended again that they were gifts from his generous mother who obtained these funds from the sale of an apartment house in Turkey. Again, the Debtor failed to produce any documentation to show that his mother owned the apartment house or was in any way related to the alleged sale. The only thing which appears from this record is that these funds were deposited into the Debtor's savings account. Thus, the Debtor once again failed to overcome the presumptive validity of the determination by the IRS and, therefore, these sums were properly classified as unreported income.

A final disputed deposit into the Debtor's savings account was made on August 11, 1986 in the amount of $1,300.00. The Debtor Claims that this amount represented "advance interest" paid to him by Sun Bank on his deposit of the $125,000.00 into a trust account. Such interest is normally taxable income. Nevertheless, the Debtor did not provide any documentary evidence substantiating this claim. Therefore, $1,300.00 should be included in the Debtor's income for 1986.

■ In addition to the deposits made into the Debtor's savings account, the Debtor could not explain several checking deposits totalling $3,357.00. The Debtor introduced a corporate check stub for $4,200.00 with the notation "repay loan" to support his claim that the deposits were the repayment of a loan made to his corporation. However, the Debtor produced no evidence of a note or a canceled check to substantiate the claim. Thus, the IRS determination that the deposit represents taxable income is proper.

To summarize, the Debtor was unable to marshall enough independent extrinsic evidence to overcome the presumption of deficiency regarding any of the disputed deposits. Therefore, this Court is satisfied that the determination by the IRS that the Debtor failed to report $160,048.00 of taxable income in 1986 is valid, and the Debtor's Objection to the claim of the IRS should be overruled with regard to this issue.

## 1986 DISALLOWED DEDUCTIONS

In its deficiency determination, the IRS disallowed business expense deductions totalling $11,227.00 and reduced the Debtor's personal interest deduction by $3,467.00.

The business deductions were related to the Debtor's lease of the 1984 Toyota Van and video equipment to his corporation, as well as for the lease of additional camcorders purchased in 1986. Deductions were taken for various expenses, such as maintenance, interest payments, and depreciation. In addition, the Debtor claimed personal deductions for interest paid on his home mortgage and credit cards.

■■ First, the Debtor took a business deduction of $2,240.00 for depreciation of two camcorders purchased during 1986. The Debtor claimed that the camcorders were leased to his corporation. However, no evidence was introduced of any lease for such equipment. Furthermore, the sales slip introduced by the Debtor for one of the camcorders stated that the purchaser was the corporation, not the Debtor. Therefore, the Debtor failed to present persuasive evidence that the depreciation expense relating to the camcorders was a legitimate business expense, and should be disallowed.

Second, the Debtor deducted business expenses totalling $8,987.00 related to the leased van and video equipment. As for the same expenses in 1985, the Debtor was unable to provide any substantiation for the amounts claimed for maintenance and interest expenses, even though the expenses appear to be legitimate. Therefore, this Court upholds the disallowance by the IRS of the van and equipment maintenance expense of $780.00 and $417.00, respectively, and the van and equipment interest of $1,075.00 and $335.00, respectively.

This Court further finds that Debtor's van and equipment depreciation deductions of $4,800.00 and $1,580.00 should be allowed for the reasons stated in the discussion regarding the 1985 deductions.

■■ Finally, the Debtor took personal deductions totalling $4,966.00, for home mortgage and credit card interest paid during 1986. The Debtor introduced evidence of a 30-year mortgage on the Debtor's primary residence. The mortgage called for monthly payments of $425.56, and the Debtor claimed that he paid $4,931.27 in interest on these payments. This evidence was not rebutted by the IRS. In addition, the Debtor claimed that he paid $446.00 in credit card interest, but provided no documentation to substantiate the claim. Therefore this Court is satisfied that $4,931.27 is a valid deduction, and that the IRS should have only disallowed $34.73 from the Debtor's 1986 return.

## 1987 DEDUCTIONS AND LOSSES

For the 1987 tax year, the IRS disallowed business expense deductions totalling $6,457.00, and reduced personal interest deductions by $54.00 and rental losses by a total of $4,232.00. The business deductions were related to the Debtor's lease of the 1984 Toyota Van and video equipment, the lease of a 1987 Acura purchased in 1987, as well as "other expenses". In addition, the Debtor claimed personal deductions for interest paid on his home mortgage and credit cards. The Debtor also claimed losses on rental property.

■■ The Debtor claimed a depreciation expense deduction of $692.00 for a 1987 Acura which he leased to his corporation. The Debtor testified that he traded in the 1984 van and used the Acura for business purposes 50% of the time. However, this Court does not find credible the proposition that a business which requires the transportation of video equipment would use a luxury car for business purposes. Thus, the IRS was correct in disallowing the depreciation deduction.

The IRS was also correct in denying the deduction for "other expenses". The Debtor failed to provide any evidence as to either justifying such a deduction or substantiating the amount of the deduction.

The Debtor also claimed van maintenance expenses of $3,587.00 and depreciation on the leased equipment of $1,508.00. For the reasons discussed above for 1985 and 1986, this Court agrees with the IRS determination disallowing the maintenance expenses, but disagrees with the determination that equipment depreciation be disallowed.

In addition to his business expenses, the Debtor also deducted $8,679.00 in personal

interest payments, $54.00 of which the IRS disallowed for lack of substantiation. The Debtor claimed that $8,004.00 of the payments related to his home mortgage, and $675.00 to credit card payments. However, the credit card interest remains unsubstantiated before this Court. Therefore, this Court is satisfied that it is appropriate to disallow the deduction of the credit card interest.

Finally, the Debtor claimed losses on two rental properties totalling $11,816.00. The IRS disallowed $4,232.00 of these deductions for failing to substantiate the underlying expenses. At the final evidentiary hearing, the Debtor did not produce any evidence as to these amounts, and only asserted that they were correct. Therefore, since the Debtor did not meet his burden of proof, the IRS determination that rental losses should be reduced by $4,232.00 is determined to be valid.

## SUMMARY

In conclusion, this Court finds that the deficiency determination of the IRS with respect to the Debtor's tax returns for the years 1982, 1985, 1986, and 1987 are correct, and the Debtor's Objection to IRS Claim be overruled, with the following exceptions:

1982—The investment tax credit carryback of $977.00 from 1985 to 1982 should be allowed. This has the effect of making the Debtor's amended return for 1982 correct as filed.

1985—Business expense deductions for depreciation of the leased van and equipment totalling $4,222.00, and an investment tax credit of $101.00, should be allowed.

1986—Business expense deductions for depreciation of the leased van and equipment totalling $6,380.00 should be allowed, and only $34.73, rather than $3,467.00, should be reduced from the Debtor's personal interest deductions.

1987—Business expense deductions of $1,508.00 for depreciation of the leased equipment should be allowed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Objection to Claim of IRS is sustained as to the following portions of the claim:

(1) the 1985 investment carry back to 1982, as set forth above;

(2) the 1985 deductions for business depreciation and investment tax credit, as set forth above;

(3) the 1986 deductions for business depreciation as set forth above;

(4) the 1987 deductions for business depreciation, as set forth above.

These portions of the IRS claim shall be disallowed. The IRS is granted leave to refile its claim in accordance with the foregoing which shall stand as an amended claim.

DONE AND ORDERED.