T.C. Memo. 2016-144

UNITED STATES TAX COURT

ROBERT L. SCHWARTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13153-11.                    Filed August 1, 2016.

Robert L. Schwartz, pro se.

<u>Louis H. Hill</u> and <u>Gary R. Shuler, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a $297,391 deficiency in

petitioner's 2007 Federal income tax and a $223,043.25 fraud penalty under

section 6663.[1]  The issues for decision are:  (1) whether petitioner received

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] $806,739.33 of unreported income in 2007 and (2) whether petitioner is liable for a fraud penalty under section 6663.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner was incarcerated in Kentucky.

Petitioner graduated from law school in 1966 and was admitted to the Ohio bar in 1967. Petitioner spent the first two years of his legal career as an examiner with the Internal Revenue Service's (IRS) estate tax department before becoming a sole practitioner specializing in personal injury civil litigation for approximately 40 years.[3]

---

[1](...continued)
Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the notice of deficiency respondent made adjustments to petitioner's taxable Social Security benefits, self-employment tax, Schedule A, Itemized Deductions, standard deduction, and exemptions for the taxable year 2007. These adjustments are strictly computational and will be controlled by our resolution of the issues.

[3]In 2014 petitioner was permanently disbarred from the practice of law by the Supreme Court of Ohio.

[*3] <u>Beverly W. Hersh's Estate</u>

On or about May 9, 2003, petitioner was given a power of attorney for the financial affairs of a wealthy, elderly friend and client named Beverly W. Hersh. Petitioner assisted Mrs. Hersh in preparing several codicils to her will and arranged for the preparation of three trust agreements and subsequent amendments thereto by a Cincinnati law firm. As of December 13, 2003, pursuant to Mrs. Hersh's estate plan (i.e., her will and trust agreements as amended), her adjusted gross estate was to be placed in the Beverly W. Hersh Trust (Hersh Trust). Thereafter, the Hersh Trust would distribute the balance of Mrs. Hersh's adjusted gross estate as follows: (1) 20% to Hadassah Hospital (Hadassah); (2) 30% to the Beverly W. Hersh Charitable Trust (charitable trust); and (3) 50% to the Hersh revocable trust. Petitioner was named executor of Mrs. Hersh's estate and trustee for the trusts and was responsible for the distribution of Mrs. Hersh's adjusted gross estate according to her will and amended trust agreements.

The money designated for the charitable trust was to be distributed to organizations with section 501(c)(3) status, like Hadassah. The money designated for the Hersh revocable trust was to be distributed at the sole discretion of petitioner as trustee to or on behalf of individuals or to organizations in a manner which would assist them with overcoming financial and substance abuse issues, to

**[*4]** live more fulfilling lives, and to provide benefits to those individuals who had

assisted and befriended Mrs. Hersh during her lifetime.

Article II, sec. 2.2, of the Hersh revocable trust agreement establishes

limitations on petitioner's discretion in his capacity as trustee as follows:

> 2.2 <u>Distribution Restrictions</u>. Grantor has established this Trust
> Agreement with the intention of providing * * * [petitioner] with a
> wide latitude of discretion to make charitable and noncharitable
> distributions to individuals and other entities as * * * [petitioner]
> determines. However, Grantor desires to place certain limitations on
> the discretion of * * * [petitioner] to ensure that the income and
> principal of the trust estate (other than as provided for in Section
> 4.2[4]) will fulfill the intentions of the Grantor in establishing this
> Trust Agreement and ensure that [the] trust estate will not be taxable
> to * * * [petitioner] in any manner, whatsoever. To this end, * * *
> [petitioner] shall not have the discretion to make distributions of the
> trust estate:
>
> (a) To * * * [petitioner] (other than as provided for in Section
> 4.2);
>
> (b) To creditors of * * * [petitioner];
>
> (c) To creditors of * * * [petitioner]'s estate;
>
> (d) To or for the benefit of any individual, in trust or otherwise,
> within six degrees of lineal or collateral consanguinity or affinity to
> * * * [petitioner]; or
>
> (e) To any entity that one or more of the parties listed above in
> Sections 2.2(a) - (d) owns an equity interest.

[4]Article IV, sec. 4.2, of the Hersh revocable trust agreement provides for reasonable compensation for the trustee.

**[\*5]**   Mrs. Hersh died on May 5, 2005.  Shortly after Mrs. Hersh's death, petitioner (as executor and trustee) began making distributions from the estate and disbursing funds through the Hersh revocable trust.

On or about August 2, 2006, petitioner filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on behalf of Mrs. Hersh's estate.  The Form 706 indicated that Hadassah was to receive approximately $2,502,469, the charitable trust was to receive approximately $3,756,703, and the remaining residual estate balance of approximately $6,261,172 was to be disbursed through the Hersh revocable trust.

Petitioner sent Hadassah a letter dated September 1, 2005,[5] stating that "Haddessah [sic] was remembered in * * * [Mrs. Hersh's] trust but it will take some months before we are ready to make [a] distribution."  Petitioner subsequently made distributions from the Hersh Trust to Hadassah as follows: (1) $5,000 on December 26, 2006; (2) $5,000 on January 11, 2008; and (3) $200,000 on August 28, 2008.

---

[5]The letter was addressed to Harold G. Arnwine, Attorney at Law, who presumably was the attorney and/or agent for Hadassah.

**[*6]** Petitioner's 2007 Tax Return

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for the taxable year 2007.  Included with petitioner's Form 1040 was a Schedule C, Profit or Loss From Business, for his "Law Office", reporting gross receipts or sales (on line 1) of $125,702.  Petitioner claimed deductions for Schedule C expenses as follows:

| Expense | Amount |
| --- | --- |
| Advertising | $1,475 |
| Office | 78,537 |
| Supplies | 1,839 |
| Taxes and licenses | 28,142 |
| Other | 2,874 |
| Total | 112,867 |

Petitioner reported $12,835 ($125,702 – $112,867) of business income on line 12 of his Form 1040.

Petitioner's Criminal Case

On May 21, 2009, the Government filed a two-count information against petitioner in the U.S. District Court for the Southern District of Ohio (District Court).  Count 1 of the information charged petitioner with mail fraud under 18 U.S.C. sec. 1341 for knowingly causing to be delivered by mail a letter to Hadassah which included a material misrepresentation and an omission regarding

[*7] the distribution to the organization from Mrs. Hersh's adjusted gross estate. Count 2 of the information charged petitioner with violating section 7206(1) by filing a false Federal income tax return for the taxable year 2007.

On May 21, 2009, petitioner voluntarily pleaded guilty in the District Court to count 1 (mail fraud) and count 2 (filing a false income tax return for the taxable year 2007) of the information.[6] As part of the plea agreement, petitioner acknowledged the truth of the following statement of facts:

STATEMENT OF FACTS

*   *   *   *   *   *   *

Beverly Hersh died on May 5, 2005. The United States Estate Tax Return (Form 706) filed on or about August 2, 2006 on behalf of the Hersh Estate by * * * [petitioner], Trustee, indicated that Hadassah Hospital was to receive approximately $2,502,469 and the Hersh Charitable Trust was to receive approximately $3,756,703. The remaining residual estate balance of approximately $6,261,172 was to be disbursed at * * * [petitioner's] discretion through the Hersh Revocable Trust. This trust was also known as the Hersh Private Trust or the Hersh Discretionary Trust.

COUNT ONE - MAIL FRAUD

As trustee, * * * [petitioner] did not segregate or take any other precautions to invest or otherwise protect the trust funds for the required disbursements to Hadassah Hospital and the Hersh Charitable Trust as specified per the Hersh trust agreements.

---

[6]Petitioner and his attorney signed and dated the plea agreement on May 6, 2009.

[*8]     Shortly after Mrs. Hersh died, * * * [petitioner] as the executor/trustee, began making distributions from the estate and disbursing funds through the Hersh Discretionary Trust.  He routed the majority of the trust funds from the Discretionary Trust through accounts or entities he controlled much of which was then used for personal expenditures and asset purchases for family members, employees, friends and close associates.

By approximately August 2008, * * * [petitioner] disbursed more than $9,000,000 from the Hersh Discretionary Trust which was significantly more than 50% of the estate which was allocated. Meanwhile, * * * [petitioner] had made distributions totaling less than $50,000 to recognized charities through the Hersh Charitable Trust.  * * * [Petitioner] made the following contributions to Hadassah Hospital:

|  |  |
|---|---|
| December 26, 2006 | $5,000 |
| January 11, 2008 | $5,000 |
| August 28, 2008 | $200,000 |

Despite * * * [petitioner]'s representations made on the Hersh Estate Tax Return, * * * [petitioner] distributed nominal percentages to Hadassah and the Hersh Charitable Trust even though the estate had benefitted from the charitable deductions.  It was only after investigating agents spoke with * * * [petitioner] on August 6, 2008, that * * * [petitioner] made the $200,000 distribution to Hadassah. Before that date, * * * [petitioner] knowingly failed to advise Hadassah that Mrs. Hersh had bequeathed 20%, or $2,502,469, of her estate to the organization despite the representation he made on the estate tax return.

On or about September 1, 2005, a few months after Mrs. Hersh's death, * * * [petitioner] sent a letter to Hadassah advising only that Hadassah was remembered by the Hersh trust but it would take time before the distribution would be made.  He failed to tell Hadassah what percentage of the estate was left to the organization. * * * [Petitioner] made material misrepresentations and omissions to

[*9] both the IRS and Hadassah with the intent to defraud Hadassah of approximately $2,502,469.  He used the United States mail when he sent the estate tax return to the IRS, and he also mailed the letter to Hadassah dated September 1, 2005.

COUNT TWO - FILING FALSE TAX RETURNS

With respect to his personal income tax matters, on April 14, 2008, * * * [petitioner] willfully subscribed to a United States Individual Income Tax Return (Form 1040) for the calendar year 2007 in Cincinnati, Ohio, which was verified by a written declaration that it was made under penalties of perjury.  * * * [Petitioner] filed this return with the Internal Revenue Service which he knew to be false as to a material matter in that the return omitted a substantial portion of his gross receipts from his Schedule C and/or Miscellaneous Income figures.  * * * [Petitioner] reported Schedule C-Gross Receipts totaling $125,702 for 2007 whereas his correct gross receipts were approximately $932,441.  The unreported receipts resulted from * * * [petitioner's] failure to report payments he caused to be made to himself for services as the Hersh executor/trustee, from money he diverted from Hersh trust funds to care for his mother, and unreported income from legal fees pertaining to his other clients' personal injury settlements.  The investigation revealed that he also filed materially false returns for the years 2002 through 2006.  His total unreported gross receipts for those years was approximately $2,533,515.

On June 8, 2010, the District Court entered a judgment in petitioner's criminal case and sentenced petitioner to 48 months' imprisonment.[7]  Pursuant to the plea agreement the District Court ordered petitioner to pay restitution totaling

---

[7]Petitioner was sentenced to 48 months' imprisonment for mail fraud and 36 months' imprisonment for filing a false tax return, to run concurrently.  Petitioner was released from prison on January 17, 2014.

**[*10]** $3,227,686.12, consisting of $2,292,469 to Hadassah and $935,217.12 to the IRS.

Notice of Deficiency

On February 3, 2011, petitioner executed a Form 872, Consent to Extend the Time to Assess Tax, extending the time for assessment of his 2007 income tax to June 30, 2012. On March 11, 2011, respondent issued to petitioner a notice of deficiency for the taxable year 2007. In the notice of deficiency respondent used the bank deposits method to determine petitioner's 2007 income as follows:

| Description | Account | Amount |
|---|---|---|
| Legal settlements | US Bank (4968) | $156,055.64 |
| Hersh deposits | US Bank (4968) | 482,768.07 |
| Legal settlements | Fifth Third Bank (0239) | 153,384.29 |
| Hilda Schwartz | US Bank (4114) | 91,490.00 |
| Legal settlements | Fifth Third Bank (7240) | 743.33 |
| Cashed checks (Hersh) | Various | 48,000.00 |
| Total | | 932,441.33 |

Respondent subtracted from this total the amount petitioner reported as gross receipts or sales on his 2007 Schedule C ($125,702) to determine that petitioner had underreported his income by $806,739.33. Petitioner timely filed a petition disputing respondent's determinations in the notice of deficiency.

[*11]                                    OPINION

I. <u>Jurisdiction</u>

Petitioner argues in his opening brief that this Court lacks jurisdiction over the matter sub judice because the IRS chose to "review the tax deficiency and related issues" in District Court and thus this proceeding is duplicative. Petitioner further argues that he has already paid more than $1.3 million in District-Court-ordered restitution, some of which was to the IRS.

A Federal District Court may order restitution to the victim of a criminal offense. 18 U.S.C. sec. 3663(a) (2012). An order to pay restitution is a criminal penalty rather than a civil penalty. <u>Creel v. Commissioner</u>, 419 F.3d 1135, 1140 (11th Cir. 2005). Although restitution is based upon an estimate of civil tax liability, it is not determinative of civil tax liability. <u>See</u> <u>Morse v. Commissioner</u>, 419 F.3d 829, 833-835 (8th Cir. 2005), <u>aff'g</u> T.C. Memo. 2003-332; <u>Hickman v. Commissioner</u>, 183 F.3d 535, 537-538 (6th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-566. The restitution statute specifically contemplates that a civil claim may be brought after the criminal prosecution by providing that the amount paid under a restitution order "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in * * * any Federal civil proceeding". 18 U.S.C. sec. 3664(j)(2) (2012). Furthermore, any amount paid to the IRS as

**[\*12]** restitution for taxes owed must be deducted from any civil judgment the IRS obtains to collect the same tax deficiency.  See United States v. Tucker, 217 F.3d 960, 962 (8th Cir. 2000).  The implication is that a civil judgment must be entered before the IRS reduces a taxpayer's tax liability by restitution paid.  Muncy v. Commissioner, T.C. Memo. 2014-251, at \*12, vacated and remanded on other grounds, 637 F. App'x 276 (8th Cir. 2016).[8]

Petitioner's voluntary plea agreement specifically states that "this agreement does not resolve any civil liability that may arise as a result of the conduct described in Counts One and Two of the Information."  The plea agreement also states that it "binds only the United States Attorney for the Southern District of Ohio and does not bind any other federal, state, or local prosecuting authority."  The criminal judgment refers to the restitution payments as "criminal monetary penalties" and makes no mention of civil liabilities or penalties.  Furthermore, there is no evidence that petitioner has satisfied any criminal restitution related to unpaid taxes or received a discharge.  Accordingly, petitioner's plea agreement

---

[8]The judgment ordering petitioner to pay restitution was entered on June 8, 2010, before August 16, 2010, the effective date of secs. 6201(a)(4) and 6213(b)(5).  See Firearms Excise Improvement Act of 2010, Pub. L. No. 111-237, sec. 3(c), 124 Stat. at 2498.

**[*13]** and criminal judgment ordering restitution do not limit respondent's assessment and collection of petitioner's civil tax liability for his taxable year 2007.

## II.  Unreported Income

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  For the presumption of correctness to attach with respect to unreported income, the Commissioner's determination must be supported by "some evidentiary foundation linking the taxpayer to the alleged income-producing activity."  Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993) (quoting Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977)), aff'g T.C. Memo. 1991-636; see also United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990).  Once the Commissioner has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous.  Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74, 176-177 (1986).

**[\*14]** To satisfy this initial burden of production, respondent introduced a bank deposits analysis for petitioner's bank accounts. These records show that petitioner received unreported income. Furthermore, respondent has shown that petitioner's law practice is the likely source of the unreported income-- specifically, legal settlements and fees from the administration of Mrs. Hersh's estate. On the basis of this credible evidence, we are satisfied that respondent's determinations in the notice of deficiency are entitled to their general presumption of correctness.

Section 61(a) defines gross income to mean "all income from whatever source derived". A taxpayer is required to maintain sufficient books and records establishing the amount of his or her income. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer fails to keep sufficient books of account or such books of account do not clearly reflect income, the Commissioner is authorized to determine his or her income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); sec. 1.446-1(b)(1), Income Tax Regs. Where the taxpayer does not maintain adequate records as to the amount and source of his or her income, the Commissioner may appropriately employ the bank deposits method to estimate the taxpayer's income. Estate of Mason v. Commissioner, 64

**[\*15]** T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction need "only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. at 77. The bank deposits method assumes that all deposits into a taxpayer's bank account are taxable unless the taxpayer can show that the deposits are not taxable. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). This presumption is rebutted to the extent that deposits are shown to include nontaxable amounts, and "the Government must take into account any non-taxable source * * * of which it has knowledge." Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).

After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the Commissioner's use of the bank deposits method is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Estate of Mason v. Commissioner, 64 T.C. at 657. The taxpayer must prove that the reconstruction is in error, and may do so, in whole or in part, by proving that a deposit is not taxable. Estate of Mason v. Commissioner, 64 T.C. at 657. Nontaxable sources include funds attributable to

**[*16]** "loans, gifts, inheritances, or assets on hand at the beginning of the taxable period." Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72). A bank deposits analysis is not invalidated even if the Commissioner's calculations are not entirely correct. DiLeo v. Commissioner, 96 T.C. at 868.

Respondent used the bank deposits method to reconstruct petitioner's 2007 gross income. A comparison of respondent's bank deposits analysis and the gross receipts or sales that petitioner reported on his Schedule C reveals a large disparity. On his Schedule C petitioner reported gross receipts or sales of $125,702. Using the bank deposits method respondent determined petitioner's gross income to be $932,441.33, an understatement of $806,739.33.

On the basis of the record, we hold that petitioner underreported his 2007 income by $806,739.33. Petitioner does not dispute receiving the deposits identified in respondent's bank deposits analysis. As part of his 2009 guilty plea, petitioner acknowledged under oath that he "reported Schedule C-Gross Receipts totaling $125,702 for 2007 whereas his correct gross receipts were approximately $932,441." Petitioner also acknowledged under oath that "[t]he unreported receipts resulted from * * * [his] failure to report payments he caused to be made to himself for services as the Hersh executor/trustee, from money he diverted from

[*17] Hersh trust funds to care for his mother, and unreported income from legal fees pertaining to his other clients' personal injury settlements."

Petitioner's argument on brief, as we understand it, is that all bank deposits in excess of the amounts reported on his 2007 tax return are reimbursements by the Hersh estate for his personal outlay of estate expenses and/or expense categories not included on the tax return. Petitioner further argues that all income and expenses were explained on separate "worksheets" which were subsequently summarized on his tax return. To support this argument petitioner offered copious amounts of photocopied receipts from various vendors, including: Abercrombie & Fitch, Carx Auto Service, CVS Pharmacy, Dick's Sporting Goods, Foot Locker, Home Depot, Kroger, Macy's, Meijer, Smoothie King, Target, Wal-Mart, and Walgreens. However, petitioner did not provide testimony about these receipts or explain how these expenditures relate to Hersh trust expenses and/or his law practice. We find petitioner's testimony and argument on brief to be conclusory, improbable, vague, and contradictory to the statement of facts underlying his voluntary plea agreement. See Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972) (stating that the Tax Court is not required to accept a taxpayer's testimony if it is improbable, unreasonable, or questionable), aff'g T.C.

[*18] Memo. 1970-335. Accordingly, we hold that petitioner underreported his 2007 income by $806,739.33.

III. Section 6663 Fraud Penalty

Respondent determined in the notice of deficiency that petitioner is liable for a civil fraud penalty under section 6663. If any part of an underpayment on a return is due to fraud, section 6663(a) imposes on the taxpayer filing the return a penalty equal to 75% of the part of the underpayment attributable to fraud. To prove that the taxpayer is liable for the section 6663 penalty the Commissioner must prove by clear and convincing evidence that (1) an underpayment of tax exists, and (2) some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. at 873. If the Commissioner proves that any portion of the underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that a portion was not so attributable. Sec. 6663(b).

A. Underpayment

Respondent performed a bank deposits analysis to reconstruct petitioner's 2007 gross income. As discussed previously, petitioner's allegation of a nontaxable source of the unreported income was improbable and contrary to the

[*19] statement of facts underlying his voluntary plea agreement. The record before the Court clearly and convincingly establishes that petitioner underpaid his tax by $297,391. See Parks v. Commissioner, 94 T.C. 654, 661-664 (1990).

B. Fraudulent Intent

The second prong of the fraud test requires the Commissioner to show that a portion of the underpayment is attributable to fraud. Fraud for this purpose is defined as intentional wrongdoing by the taxpayer with the specific purpose of avoiding tax believed to be owed. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Neely v. Commissioner, 116 T.C. 79, 86 (2001). Put differently, imposition of the civil fraud penalty is appropriate upon a showing that the taxpayer intended to evade taxes believed to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of taxes. DiLeo v. Commissioner, 96 T.C. at 874.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See id. Fraud will never be presumed and must be established by independent evidence of fraudulent intent. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). However, because direct proof of a taxpayer's intent is rarely available, fraud may be established by circumstantial evidence. Scallen v. Commissioner, 877 F.2d 1364, 1370 (8th Cir. 1989), aff'g

**[*20]** T.C. Memo. 1987-412. In determining fraudulent intent, we consider the taxpayer's entire course of conduct and reasonable inferences that may be drawn from the facts. Parks v. Commissioner, 94 T.C. at 664; Bacon v. Commissioner, T.C. Memo. 2000-257, aff'd without published opinion, 275 F.3d 33 (3d Cir. 2001).

The Commissioner may establish fraud by circumstantial evidence, which includes various "badges of fraud" on which the courts often rely. See DiLeo v. Commissioner, 96 T.C. at 875. These factors focus on whether the taxpayer engaged in conduct that is indicative of fraudulent intent, such as: (1) under-stating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) offering implausible or inconsistent explanations of behavior; (5) concealing income or assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) dealing in cash; (9) failing to make estimated tax payments; and (10) filing false documents, including filing false income tax returns. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Parks v. Commissioner, 94 T.C. at 664-665; Recklitis v. Commissioner, 91 T.C. at 910; Lipsitz v. Commissioner, 21 T.C. 917 (1954), aff'd, 220 F.2d 871 (4th Cir. 1955). An intent to mislead may be inferred from a

**[*21]** pattern of conduct.  See Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81.

Numerous badges of fraud are present in this case and demonstrate that petitioner intentionally evaded the payment of tax that he knew to be owed. Petitioner substantially understated his income for 2007 by $806,739.33.  He maintained inadequate records.  Throughout the proceedings before this Court petitioner offered implausible and inconsistent explanations for his behavior. Petitioner also acknowledged in the District Court, while under oath, that he underreported gross receipts for 2002-06 by approximately $2,533,515 and underreported income for the taxable year 2007 by over $806,000.

Petitioner's conviction under section 7206(1) is highly probative.  Section 7206(1) makes it a crime for a taxpayer to willfully make and submit any return verified by a written declaration that it is made under the penalties of perjury which he does not believe to be true and correct as to every material matter.  A taxpayer who has been convicted of willfully and knowingly subscribing to a false income tax return under section 7206(1) is not collaterally estopped from contesting that he is liable for fraud because a conviction under section 7206(1) does not require a showing that the taxpayer willfully attempted to evade tax.  See Morse v. Commissioner, T.C. Memo. 2003-332.  However, a conviction for filing

**[\*22]** a false Federal income tax return under section 7206(1) is highly persuasive evidence that the taxpayer intended to evade tax. See Morse v. Commissioner, 419 F.3d at 833. Petitioner's intentional filing of a false tax return for the taxable year 2007, reporting an amount of income which he knew to be false, is a strong indication of fraudulent intent. Petitioner offered no credible evidence to show that his filing of a false return should not be considered indicative of fraud. We conclude that the record, when taken as a whole, clearly and convincingly establishes that petitioner acted with fraudulent intent and that his 2007 underpayment was due to fraud. Petitioner has failed to submit credible evidence showing that some specific part of the underpayment is not due to fraud, and we hold that petitioner is liable for the section 6663 civil fraud penalty. See sec. 6663(b).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.