T.C. Memo. 2003-158


UNITED STATES TAX COURT


DUNCAN & ASSOCIATES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10285-02.                    Filed May 29, 2003.


Michael W. Duncan, for petitioner.

Jason W. Anderson and Kathleen C. Schlenzig, for respondent.


MEMORANDUM OPINION


CHIECHI, Judge:  This case is before the Court on respondent's motion for summary judgment (respondent's motion). Petitioner filed a response to respondent's motion (petitioner's response).  We shall grant respondent's motion.

## Background

Pursuant to the Court's Order issued under Rule 37(c)[1] on January 23, 2003, all of the affirmative allegations in paragraph 2 of the answer, and consequently all of the facts on which respondent relies in respondent's motion, are deemed admitted.

Petitioner had a mailing address in Glenview, Illinois, at the time the petition in this case was filed.

During 1990 and 1991, petitioner, a subchapter C corporation, engaged in the insurance brokerage business. During those years, Michael W. Duncan (Mr. Duncan) operated and was the president, corporate secretary, and sole shareholder of petitioner.

During 1990 and 1991, deposits into petitioner's bank accounts totaled $729,261 and $963,097, respectively.

As of December 31, 1989, Mr. Duncan had an outstanding loan balance of $86,562 with respect to amounts that petitioner had lent him for which petitioner did not charge Mr. Duncan any interest. (We shall refer to the interest that petitioner did not charge Mr. Duncan on his outstanding loan from petitioner as forgone interest.) During 1990 and 1991, Mr. Duncan did not pay petitioner any interest on his outstanding loan balance with petitioner.

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code (Code) in effect for the years at issue.

During 1990, petitioner sold a business interest to the Chicago Board of Trade for $125,000. At the time of that sale, petitioner's adjusted basis in that business interest was $16,081. (We shall refer to the amount petitioner received on the sale of its business interest (i.e., $125,000) reduced by petitioner's adjusted basis in that interest (i.e., $16,081) as petitioner's 1990 amount realized.) At all relevant times, petitioner through Mr. Duncan knew that at least a portion of the $125,000 that it received during 1990 on the sale of its business interest constitutes income to petitioner for that year.

On or about April 13 and July 18, 1991, petitioner received checks totaling $49,500, which were not deposited into any bank account of petitioner but which Mr. Duncan retained and/or deposited in his bank account. At all relevant times, petitioner through Mr. Duncan knew that $40,000 of the total $49,500 in such checks constitutes income to petitioner for 1991. (We shall refer to such $40,000 of such checks as petitioner's 1991 check amount.)

During 1990 and 1991, respectively, petitioner made payments or other transfers to or on behalf of Mr. Duncan of amounts totaling $293,650.11[2] and $460,263.56. Petitioner failed to

---

[2]Of the $293,650.11 in payments or other transfers to or on behalf of Mr. Duncan that petitioner made during 1990, $9,610 was paid to Georgio Armani for the purchase of clothing for Mr. Duncan.

record those amounts in its books and records as dividends or, in the alternative, as compensation to Mr. Duncan.

During 1990 and 1991, respectively, Mr. Duncan made payments or other transfers to or on behalf of petitioner of amounts totaling $100,900 and at least $58,780. Those respective amounts represent petitioner's nontaxable receipts from Mr. Duncan for such years.

At a time not disclosed by the record before September 1992, respondent commenced an examination of petitioner with respect to its taxable years 1990 and 1991.

At a time not disclosed by the record, petitioner filed Federal income tax (tax) returns for its taxable years 1990 (1990 return) and 1991 (1991 return). In such returns, petitioner reported gross receipts of $454,034 and $453,451, respectively. When petitioner filed its 1990 return and 1991 return, petitioner through Mr. Duncan knew and understood that each such return understated petitioner's income for each such year. To illustrate, in its 1990 return and/or 1991 return, petitioner did not report as income the following: (1) The forgone interest on Mr. Duncan's outstanding loan balance with petitioner for 1990 and 1991; (2) petitioner's 1990 amount realized; and (3) petitioner's 1991 check amount. In addition, petitioner claimed a deduction of $9,610 in its 1990 return for "outside services". However, we found above that petitioner paid the $9,610 claimed for "outside

services" to Georgio Armani for the purchase of clothing for Mr. Duncan. When petitioner filed its 1990 return, petitioner through Mr. Duncan knew that the deduction of $9,610 claimed for "outside services" was improper. Petitioner also claimed a deduction of $25,000 in its 1990 return for alleged contributions to petitioner's pension and/or profit sharing plan. However, petitioner did not make any contributions to petitioner's pension and/or profit sharing plan during 1990.

On March 24, 1993, Mr. Duncan spoke with two of respondent's revenue agents on behalf of petitioner. During Mr. Duncan's conversation with those revenue agents, Mr. Duncan acknowledged that petitioner would have to pay tax, interest, and fraud penalties that were attributable to the adjustments made by respondent to petitioner's 1990 return and 1991 return. Mr. Duncan also told respondent's revenue agents on behalf of petitioner the following with respect to petitioner's taxable years 1990 and 1991: (1) He believed that petitioner's books, records, and returns were incorrect; (2) the worksheets that petitioner presented to respondent's examining agents to explain income were false; (3) petitioner's accountant prepared an altered set of books, including journals and ledgers, to conceal the fact that petitioner had understated its income; and (4) he and one of petitioner's employees had participated in the falsification of invoices, receipts, and check register stubs during respondent's

examination.

The fraudulent and corrupt activity of Mr. Duncan and petitioner's accountant during respondent's examination of petitioner included causing an employee of petitioner to prepare 77 false deposit slips incorrectly identifying amounts totaling $179,579.36 that were deposited into one of petitioner's bank accounts (petitioner's 1991 deposits) as loans from Mr. Duncan to petitioner. By presenting such false receipts to respondent's examining agents, Mr. Duncan intended to mislead respondent's examining agents into believing that certain of petitioner's receipts during taxable year 1991 constituted the repayment by Mr. Duncan of loans made to him by petitioner, rather than income to petitioner. Furthermore, when initially asked about the source of petitioner's 1991 deposits, Mr. Duncan told respondent's revenue agents on behalf of petitioner that those deposits had to have been made from his personal account. The fraudulent and corrupt activity of Mr. Duncan and petitioner's accountant during respondent's examination of petitioner also included directing an employee of petitioner to create a fictitious receipt in the amount of $9,610 for petitioner's taxable year 1990 to document the alleged purchase of an oriental rug from Georgio Armani, which was then presented to respondent's examining agents. In fact, as we found above, the $9,610 that petitioner paid Georgio Armani during 1990 was for the purchase of

clothing for Mr. Duncan.

On March 31, 1998, Mr. Duncan entered into a plea agreement with the United States Attorney for the Northern District of Illinois (Mr. Duncan's March 31, 1998 plea agreement), in which Mr. Duncan pleaded guilty to one count of obstructing and impeding the due administration of the Code in violation of section 7212(a).[3]

In Mr. Duncan's March 31, 1998 plea agreement, Mr. Duncan acknowledged that he fraudulently and corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the Code by knowingly creating and causing the creation of false and fraudulent documents for the purpose of

---

[3]Sec. 7212(a) provides:

SEC. 7212.   ATTEMPTS TO INTERFERE WITH
             ADMINISTRATION OF INTERNAL REVENUE LAWS.

(a) Corrupt or Forcible Interference.--Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both.  The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

obstructing and impeding respondent's examination of petitioner with respect to its taxable years 1990 and 1991 and for the purpose of concealing from respondent the falsity of petitioner's 1990 return and 1991 return.

In Mr. Duncan's March 31, 1998 plea agreement, Mr. Duncan also acknowledged that: (1) Petitioner's 1990 return fraudulently understated petitioner's income by $125,000; (2) petitioner's 1991 return understated petitioner's income by $150,000; and (3) petitioner's accounting documents contained entries falsely reclassifying $125,000 of petitioner's income for 1990 and $150,000 of petitioner's income for 1991 as repayments by Mr. Duncan of loans allegedly drawn from petitioner's "Loan to Shareholder" account.

On March 20, 2002, respondent issued to petitioner a notice of deficiency (notice) with respect to its taxable years 1990 and 1991. In that notice, respondent determined deficiencies in, and fraud penalties under section 6663(a) on, petitioner's tax, as follows:

| Year | Deficiency | Fraud Penalty Under Sec. 6663(a) |
|------|-----------|----------------------------------|
| 1990 | $64,392 | $48,294.00 |
| 1991 | 75,726 | 56,794.50 |

Respondent further determined in the notice that petitioner has imputed interest income for 1990 and 1991 under section 7872 of $7,089 and $7,670, respectively, as a result of the forgone

interest on Mr. Duncan's outstanding loan balances with petitioner during those respective years.

Respondent also determined in the notice that petitioner has capital gain income of $108,919 for 1990 as a result of petitioner's sale during that year of its business interest to the Chicago Board of Trade.

Respondent further determined in the notice that petitioner understated its gross receipts for 1990 and 1991 in amounts computed as discussed below.  Respondent used the bank deposits method in order to reconstruct petitioner's gross receipts for each of the years 1990 and 1991, as follows:

| Explanation | 1990 | 1991 |
|---|---|---|
| Deposits | $729,261 | $963,097 |
| Nontaxable Receipts from Mr. Duncan | (100,900) | (58,780) |
| Amount Received on Sale of Business Interest | (125,000) | --- |
| Repayments to Customers | --- | (281,614) |
| Petitioner's 1991 Check Amount | --- | 40,000 |
| Gross Receipts | $503,361 | $662,703[1] |

[1]Due to a mathematical error, the notice determined that petitioner's gross receipts for 1991 totaled $662,903.  That mathematical error shall be corrected in the parties' computations under Rule 155.

Petitioner's 1990 return and 1991 return reported gross receipts of $454,034 and $453,451, respectively.  Consequently, respondent determined in the notice that petitioner had understated its gross receipts for 1990 and 1991 by $49,327 and $219,452,[4]

---

[4]The $219,452 amount by which respondent determined in the
(continued...)

respectively.

Respondent also determined in the notice to disallow the deductions petitioner claimed in its 1990 return of $9,610 and $25,000, respectively, for "outside services" and contributions to petitioner's pension and/or profit sharing plan.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

All of the facts on which respondent relies in respondent's motion have been deemed admitted. Those facts include the material facts on which we may proceed to resolve the issues in respondent's motion, including the issue relating to the fraud penalties under section 6663(a), see, e.g., Doncaster v. Commissioner, 77 T.C. 334, 337 (1981). We conclude that there are no genuine issues of material fact regarding the issues raised in respondent's motion.

With respect to respondent's determinations that petitioner has a deficiency in tax for each of the years at issue, on the

[4](...continued)
notice petitioner understated its gross receipts for 1991 is wrong due to mathematical errors by respondent, including respondent's mathematical error noted above. The correct amount by which petitioner understated its gross receipts for 1991 is $209,252. Respondent's mathematical errors in the notice shall be corrected in the parties' computations under Rule 155.

record presented, we sustain those determinations[5] except to the

_____

[5]In petitioner's response, petitioner does not dispute respondent's determinations that it has deficiencies in tax for the years at issue.  In fact, petitioner admits in that response that "There clearly are monies due and owing the IRS which the petitioner admits to and wants to settle."

Petitioner's response, however, does not address the balance of the issues presented in respondent's motion.  To illustrate, petitioner's response states in part:

The respondent has filed a motion for summary judgment based upon lack of response and stated allegations and to this end I (we) request that you consider mitigating circumstances, as follows:

1. Petitioner does not have funds to hire legal counsel needed to prepare briefs and re- sponses to motions.
2. Petitioner records were destroyed in a flood August 22, 2002, at a warehouse facility in Glenview, Illinois.
3. Petitioner sustained a disabling injury re- sulting in two (2) surgeries to his left foot with continuing care through Mayo Clinic Rochester, Minnesota.
4. Petitioner requests the court to consider the six (6) year delay during which the IRS did not assess outstanding taxes.
5. In excess of 80% of amounts due and owing IRS are accrued interest and penalties resulting from the IRS admitting to losing/misplacing Mr. Duncan's and Duncan & Associates' files.
6. Petitioner and legal counsel Mr. Fred Fore- man, former U.S. attorney for the 7th Dis- trict, requested on numerous occasions amounts due and owing the IRS for tax years 1990 and 1991 only to be told that cases involving fraud or allegations of fraud could not be paid until concluded.  [Reproduced literally.]

We note that the so-called mitigating circumstances quoted above in paragraph 2 of petitioner's response is inconsistent with petitioner's petition in which petitioner alleges that its

(continued...)

extent necessary to correct the mathematical errors discussed above.[6]

With respect to the fraud penalty under section 6663(a) that respondent determined against petitioner for each of its taxable years 1990 and 1991, section 6663(a) imposes a penalty equal to 75 percent of the portion of any underpayment that is attributable to fraud.  For purposes of section 6663(a), if the Commissioner of Internal Revenue (Commissioner) establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is to be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud.  Sec. 6663(b).  In order for the fraud penalty to apply, the Commissioner must prove by clear and convincing evidence, sec. 7454(a); Rule 142(b), that an underpayment exists and that some portion of such underpayment is attributable to fraud.  Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).

To prove the existence of an underpayment, the Commissioner may not rely on a taxpayer's failure to carry his or her burden of proof with respect to the underlying deficiency.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commis-

---

[5](...continued)
records for the years at issue "were discarded due to their age".

[6]See supra note 4.

<u>sioner</u>, 92 T.C. 661, 700 (1989).  The Commissioner must prove only that an underpayment exists, and not the precise amount of such underpayment.  <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699-700.  When an allegation of fraud is intertwined with reconstructed unreported income, as is the case here with respect to a portion of the underpayment for each of the years at issue, the Commissioner may satisfy such burden by establishing an underpayment by either: (1) Proving a likely source of the unreported income or (2) disproving the nontaxable source(s) that the taxpayer alleges for the unreported income. <u>Parks v. Commissioner</u>, <u>supra</u> at 661.

Petitioner understated its gross receipts in its 1990 return and 1991 return by $49,327 and $209,252,[7] respectively.  In addition, petitioner did not report as income in its 1990 return and/or its 1991 return the following:  (1) The forgone interest on Mr. Duncan's outstanding loan balance with petitioner for 1990 and 1991; (2) petitioner's 1990 amount realized; and (3) petitioner's 1991 check amount.  Furthermore, the deductions petitioner claimed in its 1990 return of $9,610 and $25,000, respectively, for "outside services" and contributions to petitioner's pension and/or profit sharing plan were improper.

In Mr. Duncan's March 31, 1998 plea agreement, Mr. Duncan

---

[7]See <u>supra</u> note 4.

acknowledged that petitioner's 1990 return fraudulently understated petitioner's income by $125,000 and that petitioner's 1991 return understated petitioner's income by $150,000. Moreover, in petitioner's response, petitioner admits that "There clearly are monies due and owing the IRS which the petitioner admits to and wants to settle."

On the instant record, we find that respondent has established by clear and convincing evidence that there was an underpayment of petitioner's tax for each of its taxable years 1990 and 1991.

In order to prove fraudulent intent, the Commissioner must prove by clear and convincing evidence that the taxpayer intended to evade tax, which the taxpayer believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Parks v. Commissioner, supra. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, supra at 874; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Petzoldt v.

Commissioner, supra at 699-700. Direct evidence of the requisite fraudulent intent is seldom available. Petzoldt v. Commissioner, supra at 699; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Consequently, the Commissioner may prove fraud by circumstantial evidence. Toussaint v. Commissioner, supra at 312; Rowlee v. Commissioner, supra at 1123; see Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368.

The courts have identified a number of badges of fraud from which fraudulent intent may be inferred, including (1) the understatement of income, (2) the making of false and inconsistent statements to revenue agents, and (3) the failure to cooperate with tax authorities. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Parks v. Commissioner, 94 T.C. at 664-665. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, 92 T.C. at 700; see Bradford v. Commissioner, supra at 307.

A corporation can act only through its officers and does not escape responsibility for acts of its officers performed in that capacity. DiLeo v. Commissioner, 96 T.C. at 875. It follows that corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. Id. Thus, in determining whether petitioner acted with the requisite fraudulent intent, we

must consider the actions of Mr. Duncan, petitioner's president, corporate secretary, and sole shareholder.

The record in this case contains indicia of fraud by petitioner. When petitioner filed its 1990 return and 1991 return, petitioner through Mr. Duncan knew and understood that each such return understated petitioner's income for each such year. In order to mislead respondent's examining agents with respect to the understatement of petitioner's income for its taxable years 1990 and 1991, Mr. Duncan and petitioner's accountant directed, prepared, and/or caused others to prepare certain false documents that were presented to respondent's examining agents.[8] Moreover, in Mr. Duncan's March 31, 1998 plea agreement, Mr. Duncan acknowledged that he fraudulently and corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the Code by knowingly creating and causing the creation of false and fraudulent documents for the purpose of obstructing and impeding respondent's examination of petitioner with respect to its taxable years 1990 and 1991 and for the purpose of concealing from respondent the falsity of petitioner's returns for each such year. In Mr. Duncan's March 31, 1998 plea agreement, Mr. Duncan further acknowledged that

---

[8]On Mar. 24, 1993, Mr. Duncan told respondent's revenue agents that he and one of petitioner's employees had participated in the falsification of invoices, receipts, and check register stubs.

petitioner's 1990 return fraudulently understated petitioner's income by $125,000.[9]

Based upon our examination of the entire record before us, we find that respondent has established by clear and convincing evidence that petitioner through Mr. Duncan intended to evade tax for petitioner's taxable years 1990 and 1991, which petitioner through Mr. Duncan believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.

We have considered all of petitioner's contentions, arguments, and requests that are not discussed herein, and we find them to be without merit and/or irrelevant.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's
motion will be issued, and decision
will be entered under Rule 155</u>.

---

[9]We note that on Mar. 24, 1993, Mr. Duncan acknowledged to respondent's revenue agents that petitioner would have to pay fraud penalties for its taxable years 1990 and 1991.