T.C. Memo. 2017-170

UNITED STATES TAX COURT

MICHAEL L. CANTRELL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7586-15.                     Filed August 30, 2017.

Michael L. Cantrell, pro se.

Edwin B. Cleverdon and Horace Crump, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  This case presents petitioner's challenge to respondent's

fraud penalty determination under section 6663[1] for tax years 2001 through 2005

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.  We round all monetary amounts to

(continued...)

[*2] (years at issue). Petitioner concedes the related income tax deficiency determinations. The issues for decision are whether (i) petitioner is liable for fraud penalties under section 6663, (ii) petitioner properly filed Federal income tax returns, and (iii) petitioner's civil tax liabilities and civil fraud penalties for the years at issue were settled in his criminal case.

## FINDINGS OF FACT

When the petition was filed, petitioner lived in Alabama. In the notice of deficiency, respondent determined the following deficiencies and penalties:

| Year | Deficiency | Penalty sec. 6663 |
|------|-----------|-------------------|
| 2001 | $34,377 | $25,783 |
| 2002 | 132,041 | 99,031 |
| 2003 | 63,450 | 47,588 |
| 2004 | 86,728 | 65,046 |
| 2005 | 34,926 | 26,195 |

Petitioner concedes the deficiencies in full but contests the section 6663 penalties for the years at issue.[2]

---

[1](...continued)
the nearest dollar.

[2]Each of the Federal income tax returns for the years at issue was jointly
(continued...)

[*3] During the years at issue petitioner was employed at the United States Army Space and Missile Defense Command (USASMDC). USASMDC, at Redstone Arsenal in Huntsville, Alabama, is responsible for, among other things, the development of antiballistic missile technology. In performing its mission, USASMDC contracts with private companies that perform research and development. Among the entities within USASMDC that dealt directly with such contracts was the Joint Center for Technology Integration (JCTI). JCTI was subsequently reformed and named the Integrated Capabilities Management Directorate (ICMD).

From 2001 to 2005 petitioner was director of JCTI; and from 2005 to 2007 he was director of ICMD. In 1999 a subordinate of petitioner at USASMDC proposed to petitioner that they enter into an agreement with an owner of companies that contracted with USASMDC. Under the agreement, petitioner and his subordinate would receive things of value, including money, for their help in giving the owner preferences to proposals, contracts, funding of contracts, and approval of purchases from vendors and subcontractors.

---

[2](...continued)
filed by petitioner and his then wife. Respondent has not determined the fraud penalty against petitioner's then wife and granted petitioner's then wife innocent spouse relief with respect to the deficiencies for the years at issue in this case.

[*4]   In about 2000 the owner proposed a scheme to petitioner and his subordinate by which funding of USASMDC projects through congressional "plus-ups" or "adds" would be placed on existing USASMDC contracts, thereby permitting additional funds to be paid to the owner's companies.  This proposal also included other schemes to siphon Government funds to the owner's companies.

From 2001 through 2007 in exchange for his activity in funding USASMDC contracts benefiting the owner's companies, petitioner received payment in the form of checks, cash, and wire transfers.  From 2001 through 2005 petitioner received a total of $959,535 in bribes that he failed to report on his Federal income tax returns.  Petitioner did not inform his then wife that he was receiving bribe income and indicated to her that he earned the money through investments.

Petitioner prepared his Federal income tax returns for the years at issue by himself.  He used TurboTax software in preparing and submitting Federal income tax returns for taxable years before as well as during the years at issue.  Because of an error, petitioner filed his 2004 return via paper filing.  For tax years 2001, 2002, 2003, and 2005 petitioner purchased an updated copy of TurboTax each year, imported the prior year's information, completed the tax return, and transmitted it to the Internal Revenue Service (IRS).

[*5]  Petitioner's Federal income tax returns include a perjury statement as follows:

> UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE EXAMINED THIS RETURN, INCLUDING ANY ACCOMPANYING STATEMENTS AND SCHEDULES AND, TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS TRUE, CORRECT, AND COMPLETE.

Petitioner's tax returns also include a disclosure consent as follows:

> I CONSENT TO ALLOW MY INTERMEDIATE SERVICE PROVIDER, TRANSMITTER, OR ELECTRONIC RETURN ORIGINATOR (ERO) TO SEND MY RETURN/FORM TO IRS AND TO RECEIVE THE FOLLOWING INFORMATION FROM IRS:  1) ACKNOWLEDGMENT OF RECEIPT OR REASON FOR REJECTION OF TRANSMISSION; 2) REFUND OFFSET; 3) REASON FOR ANY DELAY IN PROCESSING OR REFUND; AND, 4) DATE OF ANY REFUND.

The aforementioned income tax returns each include jurat information identifying petitioner and his then wife by date of birth and Social Security number.  Each of the returns indicates that petitioner and his then wife overpaid their income tax and requests a refund of the overpayment.  Petitioner does not dispute that he received refunds of these claimed overpayments.

The returns electronically submitted through Turbo Tax for tax years 2001, 2002, 2003, and 2005 do not bear petitioner's or his then wife's signature.  For tax year 2004 petitioner concedes that he signed his paper-filed Federal income tax

**[\*6]** return. In his redacted plea agreement in the criminal matter, petitioner stipulated that he filed a Federal income tax return for taxable year 2002. Petitioner and his then wife filed Federal income tax returns for the years at issue in accord with the IRS procedures in place.

On November 1, 2007, the U.S. attorney's office filed a document titled "Information" with the District Court for the Northern District of Alabama, Northeastern Division, commencing petitioner's criminal case, <u>United States v. Cantrell</u>, CR 5:07-CR-0449-SLB. The Information set forth five counts against petitioner, on the basis of the above-described actions, including: knowingly, willfully, and with intent to defraud devising a scheme to defraud and to obtain money or property by means of false and fraudulent pretenses; knowingly and corruptly receiving and accepting something of value in return for being influenced in the performance of any official act; being influenced to commit and aid in committing and to collude in, and allow, a fraud, and to make opportunity for the commission of a fraud on the United States; and being induced to act or omit to do an act in violation of his official duty. Count 4 of the Information charged petitioner with tax evasion for taxable year 2002, as follows:

> That on or about the 14th day of April 2003, * * * [petitioner] did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America

[*7] for the calendar year 2002, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Tax Return, Form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service, wherein it was stated that their joint taxable income for said calendar year was the sum of $156,785, and that the amount of tax due and owing thereon was the sum of $37,446, whereas, as he then and there well knew and believed, their joint taxable income for the said calendar year was the sum of $514,838, upon which said joint taxable income there was owing to the United States of America an income tax of $169,487, in violation of Title 26, United States Code, Section 7201.

On January 14, 2008, a redacted plea agreement was filed with the District Court, whereby petitioner pleaded guilty to all counts in the Information, including tax evasion for 2002. In the redacted plea agreement the Government recommended a sentence for petitioner that included payment of restitution in such amount as determined by the court. Petitioner agreed that the total tax loss for 2001 through 2005 for his failure to include his bribe income was $325,145, and he agreed to execute a restitution order for that amount, plus interest, payable to the IRS.

The redacted plea agreement does not refer to settlement of civil tax liabilities or civil penalties, and no IRS representative was involved in executing the redacted plea agreement. The redacted plea agreement states that it "does not limit any pending or prospective proceedings related to * * * [petitioner's] tax

[*8] liabilities". Petitioner stipulated and testified that the facts stated in the redacted plea agreement are substantially correct and accurate.

Despite petitioner's agreeing "to file amended tax returns and to cooperate with the Internal Revenue Service in any administrative or civil proceedings", petitioner has not filed amended Federal income tax returns for the years at issue.

The District Court issued judgment in the criminal case on January 6, 2010. Petitioner was adjudged guilty of conspiracy to defraud the United States, bribery of a public official, and tax evasion for 2002. The judgment included a finding that the IRS was a victim of petitioner's criminal conduct and had sustained a loss of $358,145 for 2002 through 2005 which petitioner was ordered to pay as restitution. As of the date of the trial in this case, petitioner had not fully paid the restitution ordered.

By letter dated February 8, 2013, an IRS agent informed petitioner that a report had been prepared to determine the civil fraud penalty on petitioner's tax liabilities for tax years 2001 through 2005. On February 9, 2015, respondent issued petitioner a notice of deficiency.

OPINION

Petitioner concedes his liability for the tax deficiencies for the years at issue but raises three arguments in this case, summarized as follows:

[*9]   1.  Petitioner pleaded guilty to tax evasion in his criminal case for 2002, but he did not plead guilty for 2001, 2003, 2004, and 2005; therefore, he argues that the civil fraud penalties do not apply for 2001, 2003, 2004, and 2005.

2.  Petitioner agrees he signed his Federal income tax return for 2004, but he claims he did not sign his Federal income tax returns for 2001, 2002, 2003, and 2005; therefore, he argues that the civil fraud penalties do not apply for 2001, 2002, 2003, and 2005.

3.  Petitioner claims that his civil tax liabilities for the years at issue were fully settled in the criminal case, including any liability for civil fraud penalties.

I.      Petitioner Is Subject to Civil Fraud Penalties.

Section 6663(a) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, a penalty equal to 75% of the portion of the underpayment of tax attributable to fraud is imposed.  To establish the applicability of the fraud penalty, the Commissioner has the burden of proving, by clear and convincing evidence, that (1) an underpayment of tax exists and (2) some portion of that underpayment is due to fraud.  Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 646 (1994).  This burden is met if it is shown that the taxpayer intended to evade taxes known or believed to be owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such

**[\*10]** taxes.  <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3d Cir. 1968); <u>Parks v. Commissioner</u>, 94 T.C. 654, 661 (1990); <u>Marcus v. Commissioner</u>, 70 T.C. 562, 577 (1978), <u>aff'd without published opinion</u>, 621 F.2d 439 (5th Cir. 1980).

If the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud.  Sec. 6663(b); <u>DelVecchio v. Commissioner</u>, T.C. Memo. 2001-130, slip op. at 12, <u>aff'd</u>, 37 F. App'x 979 (11th Cir. 2002).  If the Commissioner meets this burden, then the burden of proving that the taxpayer's income is not subject to the fraud penalty shifts back to the taxpayer to show by preponderance of the evidence what portion of the underpayment is not attributable to fraud.  Sec. 6663(b).  Here, petitioner offers no specific evidence to distinguish any portion of the deficiency regarding fraud; thus if respondent establishes that any portion of any underpayment is attributable to fraud, the entirety will be treated as such.

The existence of fraud is a question of fact to be resolved from consideration of the entire record.  <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), <u>aff'd without published opinion</u>, 578 F.2d 1383 (8th Cir. 1978).  Because fraud can rarely be established by direct proof of the taxpayer's intention, fraud

**[*11]** may be proven by circumstantial evidence and reasonable inferences drawn from the facts. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Moreover, the taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Courts have relied on several indicia or "badges" of fraud when considering whether the civil fraud penalty should be applied. Parks v. Commissioner, 94 T.C. at 664-665. Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), aff'g T.C. Memo. 1982-603. "Badges" of fraudulent intent include: (1) understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. Spies v. United States, 317 U.S. 492, 499 (1943); Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). As few as one or two badges of fraud

[*12] may be sufficient to prove fraudulent intent.  Bertoli v. Commissioner, 103 T.C. 501, 518 (1994).

Convictions for crimes involving perjury, deceit, breach of fiduciary duty, and concealment of criminal proceeds are highly probative of the intent to evade tax.  See Wright v. Commissioner, T.C. Memo. 2000-336, slip op. at 15. Admission of facts showing fraudulent behavior in a criminal plea agreement is also relevant to finding fraudulent intent.  See Duncan & Assocs. v. Commissioner, T.C. Memo. 2003-158.

It is well established that a taxpayer's conviction for criminal tax evasion under section 7201 for a particular year collaterally estops that taxpayer from denying liability for civil fraud under section 6663 for the same year.  Anderson v. Commissioner, T.C. Memo. 2009-44, slip op. at 38 ("We have repeatedly held that '[a] taxpayer is collaterally estopped from denying civil tax fraud under section [6663] when convicted of criminal tax evasion under section 7201 for the same tax year.'" (quoting DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992)), aff'd, 698 F. 3d 160 (3d Cir. 2012).

Respondent raised collateral estoppel as an affirmative allegation in his answer with respect to the civil fraud penalty for taxable year 2002, and petitioner conceded the issue in his pretrial memorandum.  In this case, the record indicates

[*13] that petitioner was involved in a scheme, beginning as early as 1999 and continuing until 2007, in which he used his position as director of JCTI and ICMD to steer contracts to the owner in return for bribes. Petitioner and the other parties to this scheme engaged in deceit and deception to conceal their strategy. They endeavored to keep their fraudulent scheme secret and engaged in clearly fraudulent conduct. Further, petitioner concealed his fraudulent activities from his then wife and lied to her about the source of the extra money coming into their household. Petitioner's activities with regard to the receipt of bribe income and his attempts to hide these activities are clear "badges" of fraud that clearly and convincingly indicate the civil fraud penalties under section 6663 apply for all years at issue.

Petitioner suggested that he did not believe he had to pay taxes on the bribe income and that the parties to the scheme did not consider the nonpayment of tax as part of the strategy. However, petitioner's self-serving explanation does not counter the overwhelming evidence that the underpayments at issue in this case are due to fraud and that the civil fraud penalties under section 6663 are applicable for all years at issue. Petitioner's lies to his then wife and his use of TurboTax, which would have told petitioner what was and was not taxable income, belie the true nature of his knowledge and fraudulent intent.

**[\*14]** II.    Petitioner Filed Valid Tax Returns.

With respect to the applicability of the civil fraud penalty under section 6663, section 6664(b) generally provides that the civil fraud penalty is applicable "only in cases where a return of tax is filed".  Although petitioner admits that he filed his 2004 Federal income tax return, he argues that he did not sign the returns for taxable years 2001, 2002, 2003, and 2005, and therefore these returns are not treated as "filed" for purposes of section 6664(b).

Section 6011(a) provides that "any person made liable for any tax * * * shall make a return * * * according to the forms and regulations prescribed by the Secretary."  A return required to be filed by "the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury."  Sec. 6065.

Section 6061(a) provides the general rule that "any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with the forms or regulations prescribed by the Secretary."  Section 301.6061-1(b), Proced. & Admin. Regs., provides further that the method for signing may be prescribed in "forms, instructions, or other appropriate guidance".

**[\*15]** In 1998 Congress enacted the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. No. 105-206, sec. 2001, 112 Stat. at 723, which provides, inter alia, that it is Congress' policy that the IRS implement guidelines for electronic filings with the hope that the IRS would achieve 80% electronic filing by 2007.  See H. Conf. Rept. No. 105-599, at 234-235 (1998), 1998-3 C.B. 747, 988-989; S. Rept. No. 105-174, at 39-42 (1998), 1998-3 C.B. 537, 575-578.  RRA 1998 sec. 2003(a)(2), 112 Stat. at 724, amended section 6061 by adding subsection (b).  The Secretary thereby is required to develop procedures for the acceptance of signatures in digital or other electronic form; and until such time as such procedures are in place, the Secretary may waive the requirement of a signature or provide for alternative methods of signing or subscribing a return.  Sec. 6061(b).  Thus, the strict requirements for the filing of a paper return by an agent do not apply with full force to electronically filed returns.

IRS Publication 1345, Handbook for Authorized IRS e-file Providers, provides guidance for the electronic filing of Federal income tax returns by Electronic Return Originators (EROs), such as TurboTax, including the signature requirement.  IRS Publication 1345 has been in effect since before the years at issue.  Accordingly, where it is clear that a preparer had actual authority to electronically file a return for a taxpayer, the Secretary acts within his discretion in

[*16] waiving the signature requirements. <u>Ballantyne v. Commissioner</u>, T.C. Memo. 2010-125, slip op. at 7.

We here find as fact that the joint returns filed by petitioner and his then wife for the years at issue met the signature requirements adopted by the IRS.

III.    <u>The Redacted Plea Agreement Did Not Settle Petitioner's Civil Tax Liabilities and Civil Fraud Penalty Liabilities</u>.

Petitioner claims that his civil tax liabilities and civil fraud penalties for the years at issue were fully settled by the redacted plea agreement in his criminal case, including any liability for civil fraud penalties. However, the criminal tax proceedings are separate from deficiency proceedings to establish civil tax liability, and the redacted plea agreement and judgment do not otherwise reflect a settlement of petitioner's civil tax liabilities or civil fraud penalties.

Section 6212(a) provides that if the Commissioner "determines" that there is a deficiency, he is authorized to send a notice of the deficiency to the taxpayer. A "deficiency" is generally defined as the amount by which the correct tax for a year exceeds the amount shown as tax on the return. Sec. 6211(a). The IRS cannot assess additional amounts of certain types of tax, including income tax, unless a notice of deficiency has been issued. Sec. 6213(a). Because income tax is subject to the deficiency procedures, an assessment cannot be made until the 90-day

[*17] period expires following the issuance of a notice of deficiency (or, if the Court is properly petitioned, until the decision of the Tax Court becomes final). Sec. 6213(a); sec. 301.6213-1(a)(2), Proced. & Admin. Regs.

Restitution is a legal remedy that requires a defendant to pay money or render services to a victim to redress the victim's loss. In criminal tax cases, the IRS is considered the victim. See United States v. Helmsley, 941 F.2d 71, 101 (2d Cir. 1991).

Restitution may be ordered as an independent element of a criminal sentence by a District Court, a condition of probation or supervised release, or pursuant to a plea agreement. 18 U.S.C. secs. 3556, 3663, 3663A, and 3563 (2002). Nonetheless, an order to pay restitution remains a criminal penalty, rather than a civil fraud penalty. Creel v. Commissioner, 419 F.3d 1135, 1140 (11th Cir. 2005). An earlier criminal case and resulting court order of restitution do not preclude the IRS from assessing tax liabilities and civil penalties that differ from the amount of the restitution ordered for the same tax period. See Helvering v. Mitchell, 303 U.S. 391 (1938) (holding that Congress may impose both a criminal and a civil sanction in respect of the same act or omission); Morse v. Commissioner, 419 F.3d 829, 833-835 (8th Cir. 2005) (holding that a Federal criminal prosecution does not involve the same cause of action as a civil tax

**[\*18]** deficiency case), aff'g T.C. Memo. 2003-332. Although restitution is based upon an estimate of civil tax liability, it is not determinative of civil tax liability unless the restitution order specifically so provide. See Morse v. Commissioner, 419 F.3d at 833-835; Hickman v. Commissioner, 183 F.3d 535, 537-538 (6th Cir. 1999), aff'g T.C. Memo. 1997-566; Durland v. Commissioner, T.C. Memo. 2016-133.

The civil tax liability and penalties, if any, determined by the IRS are independent of the amount of restitution ordered by the Federal District Court in an earlier criminal case. Nevertheless, petitioner relies on Creel v. Commissioner, 419 F. 3d 1135, for his argument that the redacted plea agreement acts as a full settlement of his tax liabilities. In Creel, the Court of Appeals affirmed the Tax Court's unpublished order and decision that the taxpayer's liabilities for taxes, penalties, and interest had been compromised by the U.S. attorney's office in connection with an acknowledgment that a criminal restitution order was fully satisfied. In the criminal case, the taxpayer pleaded guilty to fraudulent failure to file tax returns for 1987 and 1988. As a result, the court ordered him to pay restitution of $83,830 "plus any applicable penalties and interest" for taxable years 1986 through 1991. In 1998 the taxpayer completed payment of the restitution, and the U.S. attorney filed with the District Court overseeing the taxpayer's

[*19] criminal case a cancellation and release stating that the judgment was "paid in full". The IRS then issued a notice of intent to levy for outstanding taxes, penalties, and interest, in excess of the restitution payments.

The court in Creel acknowledged that the Government was correct "in the abstract" that the satisfaction of a taxpayer's criminal tax liability does not generally include satisfaction of the taxpayer's civil tax liability. Creel v. Commissioner, 419 F.3d at 1140. However, the court stated that the case involved "unique facts and * * * nuances", particularly the fact that the restitution order specifically encompassed "applicable penalties and interest" and that the cancellation and release necessarily included a release from liability for the penalties and interest. Id. at 1140-1141.

The restitution liability with respect to petitioner's criminal case is distinct from the restitution liability in Creel, because the redacted plea agreement and the judgment do not specifically include civil penalties as a subject of restitution. To the contrary, the redacted plea agreement specifically contemplates pending and prospective proceedings related to petitioner's tax liabilities, and it requires petitioner to file amended Federal income tax returns. The redacted plea agreement does not indicate that it is designed to settle petitioner's civil tax liabilities for penalties. Additionally, unlike the taxpayers in Creel, petitioner has

**[\*20]** not satisfied his restitution liability, and therefore has not satisfied his tax liabilities in the form of restitution.

Petitioner states that he understood, from his attorney in the criminal case, that his civil tax liabilities were fully settled with the redacted plea agreement. The IRS is authorized to fully settle tax liabilities through a closing agreement with any person regarding his or her liability for any taxable period. Sec. 7121(a); Ellis v. Commissioner, T.C. Memo. 2007-207, slip op. at 13, aff'd in part, rev'd in part 346 F. App'x 346 (2009). Section 7121 sets forth the exclusive means by which a closing agreement between the Commissioner and a taxpayer may be accorded finality. Urbano v. Commissioner, 122 T.C. 384, 393 (2004). Closing agreements are final, conclusive, and binding on the parties as to matters agreed upon, and may not be annulled, modified, set aside, or disregarded in any suit or proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact. Sec. 7121(b); Urbano v. Commissioner, 122 T.C. 384; see also Estate of Wilbanks v. Commissioner, 94 T.C. 306 (1990) (because there was no closing agreement, Government could assert a late filing penalty, even though the late filing penalty had previously been asserted and then abated).

All closing agreements must be executed on forms prescribed by the IRS. Urbano v. Commissioner, 122 T.C. 384; sec. 301.7121-1(d), Proced. & Admin.

[*21] Regs. The Commissioner has prescribed two types of closing agreements: (1) Form 866, Agreement as to Final Determination of Tax Liability, used to determine conclusively a taxpayer's total tax liability for a taxable period; and (2) Form 906, Closing Agreement, used if the closing agreement relates to one or more separate items affecting the tax liability of a taxpayer. Urbano v. Commissioner, 122 T.C. 384; Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988); Rev. Proc. 68-16, 1968-1 C.B. 770. Here, the redacted plea agreement does not satisfy the procedural requirements of a closing agreement pursuant to section 7121.

In conclusion, petitioner is liable for civil fraud penalties under section 6663 for tax years 2001 through 2005.

Finally, as reflected in the restitution order, the Department of Justice made no effort to settle the civil liability for penalties and did not take jurisdiction to do so in resolving the criminal case. Sec. 7122(a).

The Court has considered all other arguments made by the parties and, to the extent not specifically addressed herein, has concluded that they are irrelevant, moot, or without merit.

[*22] To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.